Lee Belo BROOKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44520.

Court of Criminal Appeals of Texas.

Jan. 26, 1972.

Jones, Blakeslee, Minton, Burton & Fitzgerald, Austin, for appellant.

Robert O. Smith, Dist. Atty., Herman Gotcher, Sykes, Houston and Lawrence Wells, Asst. Dist. Attys., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a murder conviction where the penalty assessed by the jury was death.

Appellant initially complains of the introduction into evidence at the guilty stage of the trial, over objection, of a temporary restraining order entered in a pending divorce suit between the appellant and the deceased on July 15, 1969, which order was not served upon the appellant until some 9 hours after the alleged killing. Appellant contends the contents of the order were hearsay and inadmissible for any purpose, denied him the right of confrontation of witnesses and constituted an ex parte judicial finding in another legal action of certain facts highly prejudicial to him.

The State's evidence reflects that the deceased, Oreander Brooks, wife of the appellant, arrived home from work around 1:30 a. m. on August 1, 1969. At the time she lived at her mother's house at 705 E. 10th Street in the city of Austin. Shortly after arriving at home she received a phone call, got in her car and left. Her brother, Arelious Walker, followed her in his car to the Austin Police Station parking lot. There she got into her brother's car. Then the appellant, her estranged husband, drove up and got out of his car and put a gun in his pocket. He forced the deceased to get into his car and threatened to kill her. He drove off.

At this juncture two officers drove up and Walker told them what had transpired. The officers followed the appellant and the deceased. Officer Ronald Bruce testified that after a chase at 70–90 m. p. h. the appellant stopped his car and proceeded to run. He was apprehended. A pistol was found on the front seat of his car and when it was retrieved Officer Bruce noted the deceased bleeding from a neck wound. Appellant stated he had shot her. The testimony of other police officers was essentially the same as Officer Bruce's.

Testifying in his own behalf the appellant acknowledged he and his wife had separated on July 14, 1969, but related they had discussed reconciliation and that she had told him on the phone earlier in the evening in question she was coming home. He testified she voluntarily got in his car at the police station and that while they were driving away he sought to place the pistol under the seat; that she grabbed the pistol and while they "tussled" over it, the pistol accidentally discharged striking his wife.

It appears that at the close of the State's case in chief the prosecution offered the divorce petition and the temporary restraining order. The objection to such documents was sustained but the State was permitted to show the deceased had filed for divorce and had sought a temporary restraining order.

At the close of the State's rebuttal evidence the same documents were again offered into evidence over objection. The temporary restraining order was admitted and read to the jury by the deputy district

clerk. The divorce petition filed July 15, 1969, which was not admitted before the jury but which is made a part of this record reflects a prayer that a temporary restraining order without notice to the defendant (the appellant herein) be issued. The temporary restraining order entered on the same day reads in part as follows:

"It appearing to the Court, after hearing and due consideration, that probable harm and injury may result to Plaintiff at the hands of the Defendant, unless he is restrained as prayed for in Plaintiff's application;

"It is, therefore, ORDERED, ADJUDGED and DECREED by the Court that the Defendant, Lee Brooks, be, and he is hereby restrained from going around or upon Plaintiff's residence at 1014 E. 14th Street, Austin, Texas, and from going around Plaintiff at her place of employment, or wherever she may be, and from bothering, molesting or in any manner interferring with Plaintiff; and

"That NOTICE forthwith issue to the Defendant, requiring him to appear before this Honorable Court on the 25th day of July, 1969, at 3:00 P.M. to show cause why a temporary injunction should not issue during the pendency of this suit.

"The Clerk of this Court is hereby directed to quote this fiat and embody the same in the appropriate writ.

"ENTERED on this 15th day of July, 1969.

"/s/ Tom B. Blackwell
Judge Presiding,
53rd District Court
Travis County, Texas." [1]

Harold White, a defense witness, testified that in the latter part of July, 1969, he and John Williams had occasion to counsel with the appellant and the deceased about their marital difficulties and that he had taken a pistol away from the appellant after the appellant had stated he was going to take his own life; that subsequently the deceased telephoned him and asked him to "see about Lee," stating she had been talking on the phone to the appellant and she believed "that fellow did what he said he was going to do."

The temporary restraining order was offered by the State because the defense had elicited evidence of a telephone conversation between White and the deceased and "to show the state of mind of the deceased."

The order was then admitted by the court "to show her state of mind because of the testimony of Mr. Hal White and the defendant also."

In its charge the court, however, charged the jury that:

"Evidence has been introduced before you as to a temporary restraining order. This evidence was admitted before you solely for the purpose of showing the state of mind of the deceased, if it does so, and for no other purpose. If you consider such evidence at all, you will consider it solely for the purpose for which it was admitted and for no other purpose."

Whether the charge meant to refer to the state of mind of the deceased at the time of the killing or on July 15 is not clear.

[1]. It appears this temporary restraining order was granted without notice. See Rule 680, Texas Rules of Civil Procedure. Without any discussion of whether the order met the requirements of said Rule 680, Cf. Crouch v. Crouch, 164 S.W.2d 35 (Tex.Civ.App.1942), we note that such rule provides that such order expires within a period of time not to exceed ten days unless for good cause shown the time is extended for a like period or unless the person against whom the order is directed consents that it may be extended for a longer period. It would appear from the record before us the temporary restraining order expired on July 25, 1969.

In Pinckord v. State, 13 Tex.App. 468 (1883), where the accused was charged with attempted murder, the court stated:

"All the proceedings, including the petition, judgment, etc., in a suit wherein defendant's wife had sued and obtained a decree of divorce from him were read by the prosecution in evidence to the jury. As a fact tending to show the feelings and relations of the parties to each other, it was doubtless legitimate to prove that the wife had instituted suit for divorce prior to, and that the same was pending at, the time it was alleged the crime charged against defendant was committed. But it was error to permit the allegations of her petition for divorce to be read and go as evidence to the jury, and especially so without any explanation or instruction as to how far and for what purpose they were alone to be considered. As to the judgment or decree for divorce, that was clearly inadmissible, because it was rendered several months subsequent to the date of the offense alleged in this case, and could possibly have shed no light upon, or tended to illustrate in the remotest degree, any issuable matter in this case."

Hoyle v. State, 153 Tex.Cr.R. 548, 223 S.W.2d 231 (1949), was a murder case where the State's theory was that the defendant waylaid his wife and shot her to death. The court described evidence as "quite impressive" noting that "[a] deliberately planned and cruel murder was pictured."

The State, however, introduced into evidence the wife's divorce petition and prayer for temporary injunction and temporary alimony as well as the court's order thereon and the service of process by the Sheriff thereunder. Despite the "impressive" evidence of the State and the defendant's testimony that he and his wife had reconciled and were happily married at the time of the alleged offense and that he had been served with notice of the injunction, the court reversed saying:

"It is possible, but not held so in this case, that the fact of the service of the injunction could have become material in rebuttal of evidence given by the defendant, but we find nothing in the record which would support the admission of the petition in court, *to say nothing of the action of the court thereon.* The fact of the instrument and the facts alleged in the instrument are two different things."

(Emphasis supplied)

On rehearing the State urged that the contents of the pleadings were admissible since the defendant had first brought out the fact that the deceased had sued him for divorce. The court refused to change its mind, distinguishing the cases cited by the State.

In Acker v. State, 421 S.W.2d 398, 402 (Tex.Cr.App.1967), this court noted that pleadings in another law suit have been held to be inadmissible as hearsay, citing Granata v. Mothner, 44 S.W.2d 817 (Tex. Civ.App.1931). In Acker the contents of the divorce petition of Acker's wife were held to be hearsay and inadmissible in prosecution for murder of the wife's former husband. See also Drake v. State, 65 Tex.Cr.R. 282, 143 S.W. 1157 (1912).

The State seeks to distinguish the authorities cited above by pointing out that in those cases the contents of the divorce petition were introduced and in the instant case the petition was not introduced but only the contents of the temporary restraining order. We cannot conclude that such a distinction is valid.

Further, the State seeks to rely upon Article 1257a, Vernon's Ann.P.C., which provides:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and

the deceased, *together with all relevant facts and circum tances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. . . .*" (Emphasis supplied)

It is well settled, however, that the general rules of evidence were not changed, limited or extended by such statute. Wiggins v. State, 115 Tex.Cr.R. 434, 27 S.W.2d 236 (1930); Howard v. State, 122 Tex.Cr.R. 371, 55 S.W.2d 1048 (1932); Beard v. State, 146 Tex.Cr.R. 96, 171 S.W.2d 869 (1943); Scott v. State, 149 Tex.Cr.App. 4, 190 S.W.2d 828 (1945); Childers v. State, 150 Tex.Cr.R. 453, 202 S.W.2d 930 (1947); Wheeler v. State, 156 Tex.Cr.R. 140, 239 S.W.2d 105 (1951).

In 4 Branch's Ann.P.C., 2d ed., Sec. 2200, p. 557, it is said:

"This article does not make hearsay testimony admissible or render admissible testimony which otherwise would be objectionable such as testimony which involved an opinion or conclusion of the witness. Russell v. State, 119 Crim. 469, 45 S.W.2d 622; Childers v. State, 150 Crim. 453, 202 S.W.2d 930."

It is clear then that the court erred in admitting into evidence the hearsay contained in the temporary restraining order.

The State contends that if there was error it was harmless error. The order informed the jury before their finding of guilt that in a prior judicial proceeding "after hearing and due consideration" it had been determined that the appellant was likely to harm the deceased. What the trial judge who entered the order found was not relevant to the issue of the state of mind of the deceased, even if it can be argued that issue was involved in the instant case. Further, the order and its contents were unknown to the appellant. The same was hearsay and highly prejudicial even though the court sought to limit the same in his charge. In light of these circumstances and the assessment of the extreme penalty, we cannot agree that the error was harmless.

Appellant also presents a serious question in his claim that the mandates of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), were not met in the selection of the jury. In view of our reversal on other grounds we need not consider this contention. In the event of a re-trial, the court's attention is directed to our recent decision in Grider v. State, 468 S.W.2d 393 (Tex.Cr.App.1971), and the five Texas cases in which the death penalty was set aside and the cause remanded to this court for further consideration in light of Witherspoon and the decisions in Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221. See Turner v. Texas, 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed.2d 858 (Tex.Cr.App., 462 S.W.2d 9); Quintana v. Texas, 403 U.S. 947, 91 S.Ct. 2284, 29 L.Ed.2d 857 (Tex.Cr.App., 441 S.W.2d 191); Whan v. Texas, 403 U.S. 946, 91 S.Ct. 2281, 29 L.Ed.2d 856 (Tex.Cr.App., 438 S.W.2d 918); Harris v. Texas, 403 U.S. 947, 91 S.Ct. 2291, 29 L.Ed.2d 859 (Tex.Cr.App., 457 S.W.2d 903); Crain v. Beto, 403 U.S. 947, 91 S.Ct. 2286, 29 L.Ed.2d 857.

For the reason stated, the judgment is reversed and the cause remanded.