**Clara Mai Youngsberg JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48942.**

Court of Criminal Appeals of Texas.

Nov. 6, 1974.

Phillip L. Cyphers, Pasadena, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, George M. Karam, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This appeal is from a conviction for murder without malice; the jury assessed the punishment at two years' imprisonment. In ground of error number five the appellant complains of the admission of hearsay statements allegedly made by the deceased which the appellant says are of such a harmful nature that a reversal of the judgment is required. We agree.

The appellant was convicted of murdering her husband, Harley Wayne Jones. The State called as a witness Mrs. Theoanne Keyes, who had operated the private school in which appellant's daughter had been enrolled. Mrs. Keyes testified, over timely objection by the appellant's counsel, about various extra-marital sexual relations that the deceased had accused the appellant of having. These accusations were made in a conversation with Mrs. Keyes neither in the presence of the appellant nor with her knowledge. We quote from the record the matter of which complaint is made in ground five:

"A. [MRS KEYES]: Well, yes. He said that he would—

"MR. CYPHERS: If it please the Court, once again we object. If I might have her again on voir dire.

"MR. KARAM: In the interest of time, Your Honor, I will stipulate

all of these conversations were outside the presence of this defendant.

"THE COURT: Is that sufficient, or do you need to take the witness on voir dire?

"MR. CYPHERS: That will be adequate if we may have an objection to each of these questions as we go along.

"THE COURT: All right. Commencing now, you may.

"MR. KARAM: Thank you.

*   *   *   *   *   *

"Q. [MR. KARAM]: Did he tell you what these things were?

"A. [MRS. KEYES]: Well, she would just leave with men.

"Q. Did he tell you a specific instance or instances?

"A. When they were in—they lived in League City and she had gone home to see about—the repairmen from Sears were coming to repair her washing machine. And then he told me that they had found her car in Galveston and she was gone for two or three weeks. I don't know how long.

"Is that what you want?

"Q. Well, just exactly what happened? I don't mean to confuse you, but I am limited how I can ask you these questions.

"Did he tell you in this conversation who she left with?

"A. Yes. The neighbors had told him that they saw her leave with these two men from Sears.

"Q. Were these white men or colored men?

"A. These were colored men.

"MR. CYPHERS: Your Honor, we want to make sure we have a

ruling as to each of our objections also.

"THE COURT: All right. Your objections are overruled from the point in the record that I told you it would be all right to have a running objection from that point on.

"MR. CYPHERS: All right.

"Q. [MR. KARAM]: Now, Mrs. Keyes, did he tell you in that conversation how long she was gone?

"A. [MRS. KEYES]: Well, not, because I knew how long she was gone.

"Q. How long was she gone?

"A. She was gone two or three weeks."

The objection offered throughout Mrs. Keyes' testimony was to "hearsay" and "to anything the deceased told her outside of the presence of the defendant." All the objections were overruled. The conversation took place in 1969 and the fatal shooting was on September 15, 1972. The appellant testified that the deceased accused her frequently of seeing other men but had never mentioned to her this incident specifically. The appellant contends that this statement was hearsay and harmful in view of its inflammatory and prejudicial nature.

Hearsay statements of the deceased have been held to be inadmissible in uxoricide trials. For example, the contents of divorce petitions filed by the deceased, Yates v. State, 489 S.W.2d 620 (Tex.Cr.App. 1973), after remand and new trial, 509 S.W.2d 600 (Tex.Cr.App.1974); Acker v. State, 421 S.W.2d 398 (Tex.Cr.App.1967); Hoyle v. State, 153 Tex.Cr.R. 548, 223 S.W.2d 231 (1949), annulment petitions filed by the deceased, Barker v. State, 509 S.W.2d 353 (Tex.Cr.App.1974), and the contents of temporary restraining orders against the defendant sought by the deceased, Brooks v. State, 475 S.W.2d 268 (Tex.Cr.App.1972).

■ The State contends that this testimony is admissible under several doctrines which avoid the hearsay rule. It is urged the testimony was offered as evidence of the deceased's state of mind at the time of the shooting and that it was not consistent with one against whom the appellant would have to defend herself. If indeed it was evidence of the deceased's state of mind, the testimony is not hearsay at all because it was not offered for its truth but to show that the deceased believed it. McCormick & Ray, Texas Law of Evidence, § 862 (1956). However, for the deceased to truly have the state of mind here presented, one could only assume that the accusations were indeed true; why else the state of mind? The effect is that the state of mind cannot be imputed to deceased without believing the truth of his statements. The statement did not demonstrate intent of future action but only discussed, three years prior to the shooting, an incident that had occurred some time prior to the conversation. It could not have been offered to prove only the state of mind, but had to imply the truth of the matter asserted. This exception to the hearsay rule does not allow admission of this testimony in this case. Cf., People v. Hamilton, 55 Cal.2d 881, 13 Cal.Rptr. 649, 362 P.2d 473 (1961).

■ The State also asserts that Art. 1257a, Vernon's Ann.P.C., allowing the admission of evidence of the relation between the deceased and the accused in homicide cases, would permit the admission of this testimony. However, Art. 1257a, V.A.P.C., does not extend the rules of evidence to make admissible inadmissible hearsay. Brooks v. State, 475 S.W.2d 268 (Tex.Cr. App.1972); Childers v. State, 150 Tex.Cr. R. 453, 202 S.W.2d 930 (1947).

■ Also, the State claims the statements by the deceased are admissible under the "verbal act" doctrine explained in Ramos v. State, 419 S.W.2d 359 (Tex.Cr. App.1967). That doctrine is used to admit unsworn statements by others to describe the relevant details of what took place at the act in issue while the speaker may be considered still under the stress of nervous excitement and shock produced by the act and before that nervous excitement has died away. Ramos v. State, supra. It has no application to these facts.

■ Finally, the State says the testimony was harmless to the appellant. We do not agree. In sum, we have then an unsworn statement by deceased, made outside the presence of the appellant and without her knowledge. It is undoubted hearsay and admissible under no exception. The statement was prejudicial and we hold that it should not have been admitted. It constitutes reversible error.

The appellant presents other grounds of error, including other statements of the same type and from the same witnesses as the ones just discussed. In view of our disposition of ground of error five, we do not find it necessary to pass upon them.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.