457 So.2d 499 (1984)
Arthur R. FLEMING, Appellant,
v.
STATE of Florida, Appellee.
No. 83-930.
District Court of Appeal of Florida, Second District.
August 24, 1984.
Rehearing Denied October 23, 1984.
*501 Richard G. Pippinger of Cohen & Pippinger, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and M. Ann Garrison, Asst. Atty. Gen., Tampa, for appellee.
BOARDMAN, Acting Chief Judge.
The jury convicted appellant Arthur R. Fleming of manslaughter of his estranged wife, Audra. We reverse and remand for a new trial on the basis of the evidentiary errors discussed below, which we believe compromised the fairness of the underlying proceedings.
The state charged Fleming with second degree murder and attempted to prove through circumstantial evidence that he killed his wife during a quarrel over issues raised in the couple's pending divorce. Under the state's theory, Audra utilized a romantic pretense to gain admission to her husband's apartment, where she subsequently confronted him about various personal and financial aspects of their divorce. Under the defense's theory of the case, however, an unknown intruder followed Audra into her husband's apartment and later killed her while she and appellant were engaged in a romantic reconciliation.
Four of the state's thirty-eight witnesses testified as to Audra Fleming's state of mind immediately before her death, describing in detail her stated adversarial purpose in visiting her husband and her proposed strategy for gaining admission to his apartment. The state defends the introduction of this testimony as relevant to rebut the suggested reconciliatory motive behind Audra's visit and as admissible under the state of mind exception to the hearsay rule. See § 90.803(3)(a), Fla. Stat. (1981). We disagree.
It is well settled that the state of mind exception codified in section 90.803(3)(a) admits qualifying extrajudicial statements only if the declarant's state of mind or performance of an intended act is at issue in the particular case. Bailey v. State, 419 So.2d 721, 722 (Fla. 1st DCA 1982); Kennedy v. State, 385 So.2d 1020, 1021-22 (Fla. 5th DCA 1980); Van Zant v. State, 372 So.2d 502, 504 (Fla. 1st DCA 1979). It is equally clear that a homicide victim's state of mind prior to the fatal incident generally is neither at issue nor probative of any material issue raised in a murder prosecution. See Hunt v. State, 429 So.2d 811, 813 (Fla. 2d DCA 1983); cases cited, supra. Moreover, even if the victim's state of mind is relevant under the particular facts of the case, the prejudice inherent in developing such evidence frequently outweighs the need for its introduction. See United States v. Brown, 490 F.2d 758, 762-67 (D.C. Cir.1973).
While exceptions exist to this general rule of inadmissibility, such as where the victim's state of mind is both relevant and necessary to rebut the defendant's claim of self-defense or his assertion that the decedent committed suicide or suffered an accidental death while toying with the murder weapon, see Kennedy, 385 So.2d at 1021 (quoting Brown, 490 F.2d at 767), none of these exceptions applies in the instant case. Conversely, under the circumstances presented, we must conclude that Audra Fleming's state of mind constituted a collateral concern which was of little consequence in determining the identity of her killer. Even if we were to find Audra's state of mind relevant to this controversy, we still would deem the challenged evidence inadmissible. Certainly the danger that the jury would misuse this evidence *502 for the impermissible purpose of imputing a state of mind to appellant (specifically, rage resulting from a confrontation, and thus a motive for murder) outweighs the minimal importance of establishing the true purpose of Audra's visit. As case law makes clear, evidence cannot be admitted under the state of mind exception to prove the state of mind or motive of someone other than the declarant. United States v. Brown, 490 F.2d at 771; Hunt, 429 So.2d at 813; Bailey, 419 So.2d at 722; Van Zant, 372 So.2d at 504. Accordingly, we believe that the trial court erred in admitting the challenged testimony of these four witnesses.
We also believe that the trial court erred in excluding evidence proffered by appellant to impeach the credibility of George Benti, a state witness. Benti, a security guard at the apartment complex where appellant resided, testified on direct examination that he responded to appellant's emergency call, examined the crime scene, and questioned appellant concerning the incident. According to Benti's direct testimony, appellant provided two divergent responses to the guard's question concerning whether appellant had relocked the front door after Audra's entry. Fleming initially informed Benti, "Yes, I relocked the door." When the guard repeated his question after finding no sign of forced entry, Fleming purportedly responded, "I believe I locked the door. I usually lock the door."
On cross-examination, defense counsel established that Benti had given a sworn, tape recorded statement to Sheriff's Deputy Rodney Shoap on the night of the homicide. A written transcript of Benti's statement to Shoap reflected that Benti had advised the officer that Fleming provided only a single response when questioned as to whether the front door had been relocked. Although its accuracy was vigorously contested, the written transcript indicated that Benti represented Fleming's sole response to have been, "No, I relocked the door." In continued cross-examination, however, defense counsel suggested that a correct transcript of Benti's statement to Shoap would reflect that the guard reported Fleming's single answer to have been, "I usually lock the door," a statement consistent with Benti's other sworn, pretrial statements concerning Fleming's answer. Benti admitted that in preparing for his testimony at the trial he had reviewed the transcript but had not listened to the tape. When confronted with the apparent inconsistency, Benti was unable to recall his actual statement to Deputy Shoap. He conceded, however, that his statement to Shoap would be the most accurate account of Arthur Fleming's purported response on the night in question.
Defense counsel later sought to introduce the actual tape recording of Benti's statement to Shoap in order to show that Benti had told Shoap that Fleming only stated that he thought he locked the door because he usually did so. The state opposed the introduction of the tape on the grounds that it was hearsay and improper impeachment, and the court rejected the proffered evidence. We believe that this ruling also constituted error.
Section 90.614(2), Florida Statutes (1981), provides that extrinsic evidence of a witness' prior inconsistent statement is admissible for purposes of impeachment when a witness, having been directed to his prior statement and offered an opportunity to explain or deny it, "denies making or does not distinctly admit that he has made the prior inconsistent statement." In this case, there is no dispute that defense counsel's cross-examination of Benti, and Benti's inability to recall his specific statement to Deputy Shoap, laid the necessary foundation for the subsequent introduction of extrinsic evidence establishing that statement. The state defends the exclusion of the proffered evidence, however, on the grounds that Benti's statement to Shoap was not inconsistent with his trial testimony. Conversely, the state asserts that the slight variance between the proffered statement and Benti's trial testimony was essentially immaterial, thus making the two statements cumulative in nature. We cannot agree.
As counsel for appellant points out, Benti's direct testimony suggested *503 that Fleming claimed to have relocked the front door after Audra's entry  an assertion which tended to undermine his intruder defense  but then changed his statement when he recognized the logical conflict between his response and his asserted defense. On the other hand, Benti's proffered statement to Shoap attributed a single response to Fleming and consequently suggested no inference of calculated equivocation. In this respect, Benti's statements would be inconsistent on a point which cannot be considered immaterial. We believe that appellant, a defendant on trial for second degree murder in a case based entirely on circumstantial evidence, should have been permitted to establish this inconsistency for any impeachment value which the disclosure might have possessed.[1] Accordingly, we hold that the trial court erred in excluding extrinsic evidence proffered by appellant to establish Benti's prior inconsistent statement.
On the basis of the foregoing errors, we REVERSE appellant's judgment and sentence and REMAND for a new trial.
GRIMES and LEHAN, JJ., concur.
NOTES
[1] The record reflects that defense counsel sought introduction of the proffered evidence solely for the purpose of impeaching Benti's trial testimony by demonstrating its conflict with the witness' previous statements. Because the proffered testimony was not offered to prove the truth of the matter asserted, it was not inadmissible hearsay. See Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); § 90.801(1)(c), Fla. Stat. (1981).