**Ray NORTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–87–091–CR.**

Court of Appeals of Texas,
Texarkana.

April 11, 1989.
Rehearing Denied May 16, 1989.

Gerald H. Goldstein, San Antonio, for appellant.

John F. Miller, Jr., Dist. Atty., Texarkana, for appellee.

GRANT, Justice.

Ray Norton was convicted in a jury trial of the murder of Bill Bailey. His punishment was assessed at thirty-five years in the Texas Department of Corrections and a $10,000 fine.

Norton contends that the trial court erred (1) by admitting a hearsay rendition of a statement allegedly made by the victim to his wife into evidence over objection; (2) by overruling his objection to unsupported statements made by the prosecutor during jury argument; (3) by holding the evidence sufficient to support the verdict; (4) by denying his motion for a directed verdict in which he had urged that the State had placed exculpatory statements by Norton into evidence and then failed to disprove them directly or indirectly; (5) by admitting business records without proper predicate; and (6) by allowing the prosecutor to imply during jury argument that deadly force cannot be used to protect property.

Norton shot and killed two men at approximately 6:00 a.m. on November 14, 1986, in his place of business. He then called the police and requested an ambulance. Officer Ricky Smith arrived at the scene at approximately 6:14 a.m. Upon Smith's arrival, Norton sent him to a garage area containing a van loaded with thirty-four new truck tires. Behind the van, the officer found the bodies of Bill

Bailey and Preston Thomas. They had both been shot in the head at close range with Norton's .38 caliber revolver and were dead when the officer arrived. An unfired .45 automatic belonging to Thomas was found on the floor near Thomas's outstretched hand. The tires had been stored in a parts room secured by a padlock. The lock had been cut away by an acetylene torch.

The State's theory of the case was that Norton killed Bailey in order to relieve himself of several loan guarantees that he had entered into on Bailey's behalf. The State argues that Norton lured the victims to his shop, had them load the tires, and then shot them both at point blank range.

In his theory of defense, Norton contends that he caught two men stealing tires in a darkened warehouse, that they attacked him without identifying themselves, and that he shot them in self-defense.

Norton contends that the trial court erred in overruling his objection to statements made by the prosecutor during jury argument which were not supported by the evidence. The State took the position that in order to support his self-defense claim, Norton had thrown down a gun near Thomas's body. Norton complains of the following portion of the prosecutor's final argument:

[A]nd the biggest evidence in this case, ladies and gentlemen, and the one that you were waiting to hear and didn't hear is fingerprints. There are . . .

MR. GOLDSTEIN: Your Honor . . .

MR. ELLIOTT: . . . no fingerprints in this case.

MR. GOLDSTEIN: Your Honor, we're going to object to counsel suggesting that there are no fingerprints. There was no evidence offered by the State . . .

MR. ELLIOTT: There is no evidence offered by anybody as to fingerprints, Your Honor. That's a true statement.

THE COURT: It's a true statement.

. . . .

[At the bench]

MR. GOLDSTEIN: If the State is going to argue that there were no fingerprints, you know, they could have asked every witness about fingerprints on each of those items, and there was no evidence about it.

MR. ELLIOTT: It's a true fact. There is no evidence about fingerprints in this case.

MR. GOLDSTEIN: That's argumentative.

THE COURT: That's your objection? Objection is overruled.

[Before the jury]

MR. ELLIOTT: One fingerprint could have cleared this up. One fingerprint on any gun. Where is it at? Why aren't there any fingerprints on the guns? Isn't it a reasonable deduction that when there is no fingerprint on something, one of two things happened. Either it wasn't touched, or it was wiped.

You can bet Bill Bailey and Preston Thomas didn't wipe a fingerprint off of nothing. There is only one man left to fix the situation so there is no fingerprints. There's no fingerprints. All these scientific tests. Not a fingerprint. Not one.

■ The jury argument by the State must fall into one of four categories: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) response to defendant's argument, and (4) plea for law enforcement. *Briddle v. State*, 742 S.W.2d 379, 388–90 (Tex.Crim.App.1987); *Gomez v. State*, 704 S.W.2d 770 (Tex.Crim. App.1985). Even when an argument exceeds the permissible bounds of these areas, it will not constitute reversible error unless, in light of the record as a whole, the argument (1) is extreme or manifestly improper, (2) is violative of a mandatory statute, or (3) injects new facts that are harmful to the accused into the proceedings. *Everett v. State*, 707 S.W.2d 638 (Tex.Crim.App.1986); *Todd v. State*, 598 S.W.2d 286 (Tex.Crim.App. [Panel Op.] 1980).

■ In the present case, as the prosecutor repeatedly pointed out, there was no evidence of fingerprints. He then proceeded to argue at length that there were no fingerprints on the gun and that the reason

there were no fingerprints on the gun was that Norton had obviously wiped them off in an effort to create a defense. This was not a reasonable deduction from the evidence because there was no evidence presented on the subject at all. No evidence of fingerprints is greatly different from evidence of no fingerprints. The record likewise contains no argument or statement by defense counsel which can reasonably be construed as inviting the State's objectionable argument. The argument was clearly designed to strengthen the State's case against the defendant, and was therefore calculated to prejudice the jury by matters not properly before them. *Campbell v. State,* 610 S.W.2d 754 (Tex. Crim.App. [Panel Op.] 1980); *Stearn v. State,* 487 S.W.2d 734 (Tex.Crim.App.1972). It is established law that the prosecutor cannot use closing argument to get evidence before the jury that is outside the record and prejudicial to the accused. *Everett,* 707 S.W.2d at 641. An objection was overruled, and the prosecutor later repeated the argument.

■ The State also contends that if the argument was improper, Norton failed to preserve error. The rule is that a general objection is normally insufficient to preserve error. *Lewis v. State,* 664 S.W.2d 345 (Tex.Crim.App.1984). Failure to make a proper and timely objection waives any impropriety in the argument. *Romo v. State,* 631 S.W.2d 504 (Tex.Crim.App. [Panel Op.] 1982). In the present case, an objection was tendered that the statement was argumentative. Prior to that objection, however, counsel had objected more accurately that the argument was outside the record.

In the recent case of *Everett v. State, supra,* the Court of Criminal Appeals examined a similar situation. That Court held a general objection of improper argument to be sufficient because the record indicated an argument between counsel before the bench that fully informed the trial judge of the nature of the error. This case may be distinguished from *Everett* because in the present case the defendant's objection that the State was being argumenta-

tive was not even generally correct and also had no visible connection to the previous complaint about the statements made by the prosecutor. However, it is also obvious that the trial court was correctly apprised of the nature of the defendant's complaint, so we shall consider the objection to be sufficient to preserve the error.

Considering the record in its entirety, including the fact that the prosecutor himself told the jurors that there was no evidence of fingerprints in the case and including the judge's instructions to the jurors that they were to base their verdict solely on the evidence, we find beyond a reasonable doubt that this error did not contribute to Norton's conviction and thus was harmless.

■ The collective exhibit of thirty-one instruments was admitted under the business record exception and reflects the business relationship between the victim and Norton. Norton contends that the trial court erred in admitting these records over his objection because a proper predicate had not been laid for admission under Tex. R.Crim.Evid. 803(6). Norton's contention is based upon Paula Bailey's testimony that she had no personal knowledge of how any of the documents were made. Paula Bailey, however, did not testify that she had prepared the records, but that she was the custodian of the business records, that these records were contemporaneously made in the course of business activities by a person with knowledge, and that it was in the regular course of business for the records to be made and for her to keep them. She was not testifying as the preparer of the records but only as their custodian. Accordingly, the proffer came within the exception provided by Tex.R.Crim.Evid. 803(6), and was properly admitted.

■ Norton next contends that the trial court erred in allowing the prosecutor to imply that deadly force can never be used to protect property. This statement was made during closing argument by the prosecutor.

You know, these men, these victims, we've reduced them to pictures, autopsy reports, styrofoam heads. They are peo-

ple. They are people. I don't have the right to say that somebody's not worthy of life. I don't approve of you, I don't like you, I don't like—whatever; therefore, you should die. Nobody has that right. Nobody has that right. And on the day when we give people that right in the unholy name of defense of property, then we have taken a giant step back to the law of the jungle where only the strong will survive; and we can take this nation and this Constitution and we can throw it all away. We can all just get us clubs and live in caves, because we will have reduced ourselves to savages.

In general terms, this argument is a misstatement of the law, as the Penal Code allows a person to use deadly force to protect his property under certain conditions. Tex.Penal Code Ann. § 9.42 (Vernon 1974). However, it appears that the argument could be interpreted in context to say that a person cannot commit murder using the defense of property as an excuse for his behavior. Under this interpretation, the argument is not improper. Even if the argument was improper, Norton has waived the error by failing to object to the argument.

■ Norton also argues that *Palafox v. State*, 608 S.W.2d 177 (Tex.Crim.App.1979), mandates that his assertions of self-defense put into evidence by the State (testimony of officers Ricky Smith and Herman McCullough) must be disproved beyond a reasonable doubt. Tex.R.Crim.Evid. 607 abrogates the "voucher rule" of *Palafox*. *See Ibanez v. State*, 749 S.W.2d 804 n. 3 (Tex.Crim.App.1986); *Gale v. State*, 747 S.W.2d 564 (Tex.App.–Fort Worth 1988, no pet.). Even if the State had this burden in the present case, when the State proves intent to commit the alleged act beyond a reasonable doubt, it has necessarily disproven Norton's theory of self-defense.

Norton next contends that the evidence is insufficient to support the verdict. The standard for reviewing the sufficiency of the evidence on appeal is the same for direct and circumstantial evidence cases, and that is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App. (Panel Op.] 1983); *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim.App.1983); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App. 1983); *see also Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Norton does not contest any element of the alleged crime except intent. The State suggests that the jury was free to disregard Norton's testimony on intent. This statement is correct. However, a factfinder may not find facts necessary to establish an element of a criminal offense purely on the basis of its disbelief of the accused's contrary assertions. *Gold v. State*, 736 S.W.2d 685 (Tex.Crim.App.1987). The State has the burden of going forward with evidence to show beyond a reasonable doubt every element of the offense.

■ The State offered evidence that Norton had shot Bailey in the head at close range. The State also offered evidence to show that there was no physical struggle between Norton and Bailey by showing that there was no blood on Norton, that Norton's clothes were not torn or stretched, and that Norton had no physical wounds or injuries as a result of a struggle. The State also offered evidence to support its contention that the pistol found beside the body of Preston Thomas was not dropped by the falling victim onto a concrete floor because of the unscratched, unscarred condition of the .45 caliber weapon. The State offered evidence of financial dealings between Norton and Bailey that provided a motive for Norton to kill Bailey. The State's expert interpreted the bloodspatter patterns to support the State's theory of an execution style killing. We find this to constitute sufficient evidence to support the jury finding that Norton intentionally killed Bailey. Furthermore, in determining the sufficiency of the evidence, the reviewing court must consider all the evidence, whether properly or improperly admitted. *Beltran v. State*, 728 S.W.2d 382 (Tex.Crim.App.1987). Thus, in addition to

the above mentioned evidence, we must include the testimony of Paula Bailey, which we shall now discuss.

Norton contends that the trial court erred by admitting specific testimony by Bailey's widow over his objection of hearsay and that the improperly admitted testimony was harmful. The testimony was elicited on voir dire examination of the witness outside the presence of the jury, and objection was made and overruled at that time. When the testimony was offered before the jury, counsel again objected and was overruled; however, the trial judge gave the jury a limiting instruction that the testimony was only to be considered to show the state of mind of the deceased and not for the truth of the matter asserted by the declarant. The testimony in question by Paula Bailey was as follows:

Q  Now late that night did your husband receive a telephone call?

A  Yes, sir, he did.

Q  And did you awaken?

A  Yes, sir.

Q  And as it—when you awakened, what did you observe?

A  My husband was—he just had talked to Ray on the phone, and he told him to pick up Preston and go—come help him work at the shop.

MR. GOLDSTEIN: Your Honor, we're going to object to the witness's hearsay response as to what her husband told her was told to him.

Q  Once again, Your Honor, that would be pro—offered for the limited purpose to show that as a result of a telephone call, that the defendant—the state of mine—I mean, the state of mind of the deceased, and that based upon that, he did in fact perform an act thereafter.

On cross-examination, the witness stated that she had no personal knowledge of the telephone call because she was asleep and did not hear the telephone ring.

There are two distinct elements in this testimony: (1) Bailey was informing his wife of his intention to go to Norton's shop, and (2) Bailey was telling his wife that he was going there because Norton had called and asked him to come. The testimony was offered for the limited purpose of showing Bailey's state of mind under the exception to the hearsay rule codified at Tex.R.Crim.Evid. 803(3). This exception includes a statement "of the declarant's then existing state of mind, emotion, sensation, of physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed* ... (emphasis added)."

▪ A homicide victim's state of mind prior to any fatal incident is generally neither at issue nor probative of any material issue in a murder prosecution, but an exception exists when the victim's state of mind is relevant and necessary to rebut the defendant's claim of self-defense. *Fleming v. State*, 457 So.2d 499 (Fla.Ct.App. 1984).

Texas courts have admitted as an exception to the hearsay rule state of mind statements [1] looking into the future.[2] *Southland Life Insurance Co. v. Greenwade*, 143 S.W.2d 648 (Tex.Civ.App.–Waco 1940), *aff'd*, 138 Tex. 450, 159 S.W.2d 854 (Comm'n App.1942, opinion adopted); *Trucker's Equipment, Inc. v. Sandoval*, 569 S.W.2d 518 (Tex.Civ.App.–Corpus Christi 1978, no writ). The criminal rule includes the same exception as the civil rule of evidence. On the federal level,

---

1. Intention, viewed as a state of mind, is a fact, and the most common way for a fact to evince itself is through spoken or written declarations. This is the basis for this exception to the hearsay rule. *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978).

2. According to *Prater v. Traders & General Insurance Co.*, 83 S.W.2d 1038 (Tex.Civ.App.–Waco 1935, no writ), the guarantee of reliability in this type statement is the absence of any motive to fabricate if the declaration is a natural one unfiltered by circumstances of suspicion, then the statement should be allowed. The reliability of statements under this exception springs from the natural and usual expressions inherent in our daily social business lives. It is only normal to inform families of an impending trip. Bush, *Hearsay Under the Texas Rules of Evidence*, 37 Baylor L.Rev. 945 (1985).

statements of intent by declarant to prove his future conduct were declared admissible in *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892). In the cases of *United States v. Sperling*, 726 F.2d 69 (2nd Cir.1984), and *United States v. Cicale*, 691 F.2d 95 (2d Cir.1982), the federal court admitted such statements to prove the future conduct of another person, but the admission was only a declaration of intended future conduct.

To admit memory declarations under the state-of-mind exception would defeat the entire hearsay rule. Maguire, *The Hillmon Case—Thirty Three Years After*, 38 Harv.L.Rev. 709 (1925), *quoted in* H. Wendorf & D. Schlueter, *Texas Rules of Evidence Manual* 329 (2d ed. 1988). That is the reason that memory declarations are expressly excluded by the rule.

■■■■ Thus, Bailey's statement to his wife that he intended to go to Norton's shop was admissible for the limited purpose to show that he intended to go to the shop to help Norton. But the second factor communicated that Bailey was going there because Norton had called and asked him to come clearly states a fact remembered which is specifically excluded from the exception. What a person learns from a telephone conversation is basically hearsay. *Dalton v. State*, 516 S.W.2d 937 (Tex. Crim.App.1974); *Bates v. State*, 165 Tex. Crim. 140, 305 S.W.2d 366 (App.1957). For a witness to recount what another person told her about receiving a call, about who had called, and about what was said was hearsay that does not fit under the stwre of mind exception.

The State initially contended that introduction of the hearsay had been waived by the defendant because the defendant had introduced into evidence a written statement of Paula Bailey containing the same information. The State contends that because Paula Bailey's statement is listed as Exhibit # 1 in the transcript and because there is no notation of "not admitted" beside the listing, this statement should be considered as admitted into evidence. This list shows that the statement was marked as an exhibit, but we find no offer of this exhibit in the statement of facts and no ruling by the trial judge admitting this exhibit into evidence. Therefore, we cannot conclude that Paula Bailey's written statement was admitted into evidence.

■■■ Furthermore, the corollary to this rule provides that the harmful effect of improperly admitted evidence is not cured when the defendant attempts to meet, destroy or explain by the introduction of rebutting evidence. Such an effort to rebut does not waive the right to challenge the admissibility of the evidence originally admitted. *Maynard v. State*, 685 S.W.2d 60 (Tex.Crim.App.1985). This would also apply to Norton's counsel's cross-examination of Paula Bailey concerning the hearsay testimony. This interrogation was directed toward getting clearly before the jury the fact that this testimony was based upon hearsay and not on Paula Bailey's personal knowledge.

Next, we must determine if Norton made the proper objection in order to preserve any possible error. Rule 103(a)(1) of the Rules of Criminal Evidence requires a timely objection stating the specific ground of the objection, if the specific ground is not apparent from the context.

Outside the presence of the jury, counsel for Norton asked the court to instruct Paula Bailey "not to volunteer what someone told her or what she heard from someone else, including her husband." The court held a hearing on the hearsay objections outside the presence of the jury. After Paula Bailey had given this testimony, Mr. Goldstein addressed the court as follows:

MR. GOLDSTEIN: Your Honor, we believe that the response that the witness intends to give relates to what her husband told her, which is clearly within the hearsay rule before the jury. The State has not offered same for any limited purpose. It fits within no exception to the hearsay rule. We would object, out of the presence and hearing of the jury, to such hearsay statements.

The court instructed the witness, Paula Bailey, concerning the hearsay rule. Mr. Goldstein again stated his objection, "I did

not mean to waive our hearsay objection; but for the record before it's overruled, I would have that objection." The court informed Mr. Goldstein that his objection had been ruled on, and that he would not have to make it again. Then the jury panel was brought in. At the time that the evidence in question was presented, Norton's counsel objected "to the witness's hearsay response as to what her husband told her was told to him." After the lengthy colloquy about this testimony outside the presence of the jury, there can be no question that the court understood that the objection was to the hearsay information received by Paula Bailey from her husband.

■ We must next determine if the instruction to the jury by the trial court cured the error. The general rule is that error in admitting improper evidence may be corrected by withdrawal and an instruction to disregard it, except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is in such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Waldo v. State,* 746 S.W.2d 750 (Tex.Crim.App. 1988). In the vast majority of cases, the evidence complained of has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused. In that situation, there is an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. *Gardner v. State,* 730 S.W.2d 675 (Tex.Crim.App.1987). On the other hand, there is an old line of cases providing that when evidence is of a material character and is calculated to influence or affect the jury, its withdrawal from their consideration will not heal the vice of its admission. *Music v. State,* 135 Tex. Crim. 522, 121 S.W.2d 606 (1938); *Edmondson v. State,* 106 Tex.Crim. 321, 292 S.W. 231 (1927); *Deckerd v. State,* 88 Tex.Crim. 132, 225 S.W. 166 (1920); *Kemper v. State,* 63 Tex.Crim. 1, 138 S.W. 1025 (1911); *Darnell v. State,* 58 Tex.Crim. 585, 126 S.W. 1122 (1910); *Henard v. State,* 46 Tex.Crim. 90, 79 S.W. 810 (1904); *McCandless v. State,* 42 Tex.Crim. 58, 57 S.W. 672 (1900). It is no doubt more difficult for the jurors to resist using evidence which is material to deciding the issues before them.

■ The present case does not involve a withdrawal of evidence but rather an instruction to consider the evidence only for a specific purpose. This instruction was correct to the extent that the testimony concerned Bailey's statement of intent to do a future act. In other words, a portion of the testimony was clearly admissible for the limited purpose of showing Bailey's state of mind. The remainder of the testimony that did not fall within the hearsay exception because it was a recounting of past conduct was not admissible even with the limiting instruction. Therefore the jury was allowed to consider this inadmissible testimony to show Bailey's state of mind, and it showed that his state of mind was that he was intending to go to work to help Norton, because Norton had called him. Thus, the jury instruction did not cure the improper admission of this evidence.

Rule 103(a) of the Texas Rules of Criminal Evidence provides that an error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a proper objection is made. This rule is consistent with the harmless error rule and does not change the law in that regard. Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides that if the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction. We must now decide if the error was harmful.

In the closing argument, the State's attorney made no pretense of limiting the testimony to the decedent's state of mind. Rather, the State used this evidence to show Norton's motive:

> You see a motive. You see Bailey called to work for Norton. You see men loading tires. We agree the tires were loaded. That's what Norton told these men to do.

The State's theory is that Norton lured the two men to the shop during the early hours of the morning and murdered them in cold blood. This testimony supports the first part of the State's theory. In absence of this testimony there is no actual proof that (1) Bailey received a phone call (2) from Norton (3) asking him to come to the shop. There was testimony by Paula Bailey that her husband often received calls from Norton in the middle of the night to come to the shop to work. This, coupled with Bailey telling his wife that he was going to work, which was the admissible portion of the statement, was evidence from which the jury might have inferred that Bailey received a telephone call from Norton asking him to come to the shop. However, we cannot speculate whether in the absence of the direct testimony the jury would have drawn such an inference.

The significance of the harm of the inadmissible portion of the evidence, even with limiting instructions, is that it destroyed the possibility that Bailey could have gone to the workplace intent on taking tires without Norton's knowledge. The telephone call would have placed in his mind an awareness that the boss, who had called, was expecting him at the workplace, so even looking at it limited only to Bailey's state of mind, the evidence still directly contradicts Norton's self-defense contention. There is an obvious likelihood that this double hearsay contributed substantially to the outcome of the trial. We cannot determine beyond a reasonable doubt that this error made no contribution to Norton's conviction.

Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.

BLEIL, Justice, concurring.

I agree that the judgment must be reversed and remanded, but write separately to address the two errors which I believe compel this result: the improper admission of hearsay evidence and the improper allowance of the State to argue on matters not in evidence.

A singularly critical fact issue at trial was whether Ray Norton had surprised the two men burglarizing the warehouse, as he claimed, or whether he had requested that they come to the warehouse, then killed them. The testimony by Paula Bailey that her husband told her that Ray Norton telephoned him about 3:30 a.m. and directed that he and the other victim come help Norton at the shop may well have been devastating to the defense in the jurors' minds. The defense objected to Paula Bailey's testimony relating to what her husband told her because it was hearsay. The court overruled the objection, ruling that the testimony was admissible "only to show the state of mind" of Bill Bailey.

The trial court erred in ruling that the testimony was admissible to show Bill Bailey's state of mind. If the testimony was evidence of his state of mind, it was not hearsay because it was not offered to prove its truth, only that Bill Bailey believed it. The testimony that Bill Bailey said that he received a telephone call from Ray Norton in which Norton asked him to help him with some work at the shop, clearly was presented to prove the truth of the matters stated. Tex.R.Crim.Evid. 803(3), while codifying the state of mind exception to the hearsay rule, in no manner broadens the exception. The type of state of mind ordinarily in issue is emotion, ill will, mental suffering, intent, and so forth. Most commonly, the rule is applied to declaration as to hatred or affection. *See* 1A R. Ray, *Texas Law of Evidence Civil and Criminal* § 861, et seq. (Texas Practice 3d ed. 1980 & Supp.1986). Rule 803(3) refers to a few types of the state of mind contemplated, such as emotion, sensation or physical condition. It seems apparent that Paula Bailey's testimony relating to the matters told her by Bill Bailey is not about the type of matters generally considered to be admissible as declarations as to state of mind.

Hearsay statements allegedly made by a deceased about a defendant are not lightly admitted as evidence in our courts. *See, e.g., Van Byrd v. State,* 605 S.W.2d 265 (Tex.Crim.App. [Panel Op.] 1980); *Fazzino v. State,* 531 S.W.2d 818 (Tex.Crim.App.

1976). In *Jones v. State*, 515 S.W.2d 126 (Tex.Crim.App.1974), the trial court allowed a witness to testify about certain accusations of sexual misconduct which the then-deceased victim made about the defendant who was accused of killing him. The State urged on appeal that this testimony was admissible as a state of mind exception to the hearsay rule. In rejecting this contention, the court held that the evidence "could not have been offered to prove only the state of mind, but had to imply the truth of the matter asserted. This exception to the hearsay rule does not allow admission of this testimony in this case." 515 S.W.2d at 129. So, too, must we hold that the state of mind exception does not allow the types of declarations by Bill Bailey placed in evidence through Paula Bailey.

The additional basis of my concurrence is that, while I agree with the majority that the trial court improperly allowed argument on matters not in evidence, I am unwilling to join in holding that, beyond a reasonable doubt, the error did not contribute to the conviction. There was no evidence concerning fingerprints on Thomas' weapon found near his body. Nevertheless, the trial court allowed the State, over objection, to emphatically argue that there were no fingerprints on that weapon and that the deduction from this "evidence" was that Norton wiped the fingerprints off.

This case primarily involved the intent of Norton, which was shown from the circumstances. This fact is worth bearing in mind in our harm analysis. The test for harmless error is in Tex.R.App.P. 81(b)(2). Given the existence of error, the first of three progressive steps is taken; the second step obligates an appellate court to reverse the judgment; the third obviates the necessity of reversing the judgment only if the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment. *Mallory v. State*, 752 S.W.2d 566, 569, 570 (Tex. Crim.App.1988). We thus find ourselves facing errors that require reversal *unless* we can determine beyond a reasonable doubt that the errors did not contribute to Norton's conviction or punishment. In light of the entire record, I am unable to determine that the errors *beyond a reasonable doubt* made *no* contribution to the conviction or the punishment as required by Tex.R.App.P. 81(b)(2).

CORNELIUS, Chief Justice, dissenting.

I cannot agree that the error in allowing Mrs. Bailey to testify about Norton's telephone conversation with her husband the night of the murder is such as requires a reversal of the case.

A careful examination of the statement of facts reveals that the defense objection was only to what Mrs. Bailey's husband told her *was told to him* in the conversation. The objection to that was overruled and it was admitted for the limited purpose of showing Bailey's state of mind. However, there was no objection to her statement that Norton called her husband. In fact, the defense later elicited that testimony from Mrs. Bailey on cross-examination. Thus, the testimony that Norton called Bailey on the night of the murder was properly in evidence. This evidence, together with the unobjected-to testimony that Norton called Bailey on many occasions late at night to come work for him, and Bailey's own statement on the night of the murder that he was going to go down and help Ray, makes the additional testimony that Norton told Bailey to pick up Preston and come down to the shop harmless, in my judgment. I think this conclusion is reinforced by the defense's failure to object when the State, in its closing argument, made the comment on motive which is quoted in Justice Grant's opinion.

Evidence that Norton called Bailey and that Bailey told his wife he was going down to help Ray was properly admitted. Certainly this shows that Bailey's expressed state of mind was to help Ray. I cannot see that the additional statement that Norton had called and asked him to pick up Preston and come to the store adds anything to that evidence.

Moreover, except for the oblique reference in closing argument to motive, there is no mention of Norton's having lured the

victims to the store, nor is there any specific reference to the complained-of testimony in argument, either by the State or the defense. In this situation, considering all the evidence, I find beyond a reasonable doubt that the additional testimony was not such that it contributed to either the conviction or the punishment. I would affirm the judgment.