### RAY MUSIC v. THE STATE.

No. 19542.  Delivered June 24, 1938.
Rehearing granted November 23, 1938.

The opinion states the case.

*J. W. McCullough* and *Wallace Hughston,* both of McKinney, and *Baskett & Parks,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The conviction is for burglary; the punishment assessed is confinement in the penitentiary for a term of seven years.

The indictment charges, in substance, that on or about

March 24, 1937, appellant broke and entered the house occupied by M. D. Hanaker with the intent to take therefrom property belonging to said M. D. Hanaker, etc.

The proof shows that about 2:30 or 3:00 A. M. of said night, three men appeared at the depot of the L. A. & T. R. R. in the town of Farmersville, captured the night watchman, marched him to the Community Public Service Company, and appellant held a shotgun on him while his two companions entered the building and took $30.00 from a vault. While his coprincipals were so engaged, appellant took charge of another man, Jim Nolan, who happened by the corner where the night watchman was being guarded. When the pair had finished robbing the building, they held a conference with appellant concerning the disposition they should make of the two men, and decided to lock them in the vault. This occurred about 3:45 A. M. About 5 A. M. Miss Willie Cook and Mrs. L. L. Miller, who worked at a near-by coffee shop, came down the street to go to work. The manager had not arrived, so they waited in front of the restaurant. While waiting they observed H. B. Huddleston come out of W. P. Cook's store, located across the street. He came over, took the two women and two boys, who were waiting with them, and put them in the adjoining vault, and disappeared.

Bills of exceptions numbers three and four complain of the testimony given by Miss Cook and Mrs. Miller, showing that Huddleston, one of the burglars, had placed them, along with the two boys, in the vault of the Community Public Service Company, closed the door and placed a crate of soda water bottles in front of it. Appellant objected on the ground that if a conspiracy between himself, Huddleston and another had existed, it had ended at the time the women and boys were placed in the vault, and any subsequent act or declaration by Huddleston was not admissible against him, as the object of the conspiracy had been consummated.

We agree that appellant's contention, as a general legal principle, is correct, unless there was either an agreement between Huddleston and the remaining parties to commit other and further burglaries at this town, or if the booty still remained to be divided, or if the conspirators were endeavoring to escape detection at such time; and, in any event, it seems to us that the action of Huddleston in thus confining the two ladies and two little boys at the same place and in the same manner as the conspirators had at an earlier hour confined the night watchman and Mr. Nolan was for the same purpose

and animated by the same motive as had animated them when they first confined these two men. He pursued the same tactics; went to the same place, and used a similar place of confinement for the ladies as had earlier been used for the men, and we think such testimony was material and properly admitted.

Let it be supposed for argument that no one had been able to identify Huddleston at the scene of the burglary, would it not have been a strong circumstance toward fixing his guilt to show that Huddleston, about an hour after the burglary, carried these two women to the burglarized place and placed them in a vault, right next to the vault where the burglars, one of whom was this appellant, had previously placed two men, who could have given the alarm, in a like position as these ladies were placed. We have no way of knowing that the conspiracy was ended. That it had been entered into we are justified by the facts in saying. Then, until their purposes had been fully accomplished, it seems that the conspiracy would continue. These ladies might have been in a position to have given the alarm; they resided upstairs near the scene of the burglary, and it is not a violent presumption to say that they might have seen the events leading up to the burglary and were on their way to give an alarm, otherwise what reason can be given for their incarceration? We find one of the conspirators still at the scene of the burglary, and acting in a similar manner as he was acting at the original burglary, and it seems to us that the jury were justified in believing that the conspiracy had not yet been ended, and that the continued act of one of the conspirators was admissible against all, just as the act of this appellant when he held the night watchman as prisoner while his coconspirators were burglarizing the place was admissible against all, as well as the act of imprisoning such night watchman and Mr. Nolan was admissible against all.

Bill of exceptions number seven complains of the following testimony given by a deputy sheriff of Dallas County: "I knew the house at No. 4323 Electra Street in Dallas. I knew Ray Music, Bill Garrett and H. B. Huddleston. I saw them going in and out of this house on the nights of March 20th and 22nd. I have seen them around that house together *and a number of other thieves.*"

Appellant objected to this statement by the witness. The court sustained the objection and instructed the jury not to consider it. It occurs to us that such a voluntary statement, which was immediately withdrawn by the court, and which was not responsive to the question, was not of sufficient moment

to cause a reversal of this case. Such answer was not called for by the question, and not of such a serious import as to have influenced the jury to render an improper verdict, especially in view of the testimony that the State introduced relative to this offense, and the evidenced belief of the jury in the truth thereof.

Appellant has a number of other bills in the record complaining of the admission of testimony, but the bills are insufficient because they fail to show that at the time of the admission of said testimony, he made any specific objection thereto. All of said bills are qualified by the court and as qualified fail to reflect any reversible error.

The objections to the court's charge have been considered and appear to us to be without merit.

Perceiving no error herein, this cause is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is urged that we were wrong in the disposition of the case originally wherein we held that the bills of exception discussed did not present reversible error. After further deliberation and investigation we have reached the conclusion that appellant is correct in his contention.

The indictment charges, in substance, that on or about March 24, 1937, appellant broke and entered the house occupied by M. D. Hanaker with the intent to take therefrom, property belonging to said M. D. Hanaker, etc.

The proof shows that about 2:30 or 3:00 A. M. of said night, three men appeared at the depot of the L. A. & T. R. R. in the town of Farmersville, captured the night watchman, marched him to the Community Public Service Company, and appellant held a shotgun on him while his two companions entered the building and took $30 from a vault. While his coprincipals were so engaged, appellant took charge of another man, Jim Nolan, who happened by the corner where the night watchman was being guarded. When the pair had finished robbing the building, they held a conference with appellant concerning the disposition they should make of the two men and decided to lock them in the vault. This occurred about 3:45 A. M. About 5:00 A. M. Miss Willie Cook and Mrs. L. L. Miller, who worked at a near-by coffee shop, came down the street to go to work. The manager had not arrived, so they waited in front of the res-

taurant. While waiting they observed H. B. Huddleston come out of another store located across the street. He came over, took the two women and two boys who were waiting with them, and put them in the adjoining vault and he then left.

Bills of exception numbers three and four complain of the testimony given by Miss Cook and Mrs. Miller, showing that Huddleston, one of the burglars, had placed them with the two boys in the vault of the Community Public Service Company, closed the door and placed a crate of soda water bottles in front of it. Appellant objected on the grounds that if a conspiracy between himself, Huddleston and another had existed, it had ended at the time the women and boys were placed in the vault, and any subsequent act or declaration by Huddleston was not admissible against appellant, as the object of the conspiracy had been consummated.

Appellant's contention is correct unless the said act of Huddleston in placing the women and boys in the vault—which was subsequent to the Hanaker burglary—became provable under some exception to the general rule which excludes such evidence. Before such evidence would be admissible it must appear that the State has brought itself under some such exception.

(*a*) If appellant, Huddleston and the third party had entered into a conspiracy to commit a series of burglaries in the town on the night in question, and all of the parties were still in the town in pursuance of their original purpose, we think the evidence complained of would be admissible.

(*b*) If the agreement or conspiracy contemplated a division of the spoils secured in the Hanaker burglary and such division had not been made at the time Huddleston locked the witnesses in the vault then such act on his part would be provable against appellant. See Robins v. State, 117 S. W. (2d) 82, and cases there cited.

(*c*) If Huddleston's act in placing the witnesses in the vault was done to secure the safety of his companions in flight by preventing report of the Hanaker burglary his said act would be provable against appellant; however, if the Hanaker burglary was completed, and Huddleston's companions had gone, and he was engaged in the independent burglary or attempted burglary of some other store with which act his companions had no connection, and Huddleston placed the witnesses in the vault to secure his own escape or detection, his act would not be provable against appellant.

We believe the evidence falls short of establishing any of the exceptions mentioned, and that we can not hold to the contrary

without indulging in presumptions against appellant as to the existence of certain facts. The Hanaker burglary was completed at or about 3:45 A. M., which was the last time appellant and the third party were shown by the evidence to have been seen. The spoils secured in the Hanaker burglary was money, easily divisible among the parties. The ladies were placed in the vault by Huddleston shortly after 5:00 o'clock A. M., a few minutes after they had seen him come out of another store—not the Hanaker place. It had been more than an hour since the latter place was burglarized. The record is silent as to the whereabouts of appellant and the third party when Huddleston took charge of the women. It seems to be certain that they knew nothing of the Hanaker burglary having taken place because from their own testimony they had been asleep and were not awakened by their alarm clock until after that offense was committed. If Huddleston observed the light in their room it was not unnatural that he may have thought perhaps they had observed his movements and locked them in the vault to secure his own escape, at a time when appellant and the third party may have been many miles away.

The incident reflected by bill of exception number seven was unfortunate. It shows that the deputy sheriff of Dallas County testified as follows: "I knew the house at No. 4323 Electra Street in Dallas. I knew Ray Music, Bill Garrett and H. B. Huddleston. I saw them going in and out of this house on the nights of March 20 and 22d. I have seen them around that house together *and a number of other thieves.*" The part of the witness' answer underscored appears to have been voluntary and not in response to the State's question. Appellant objected to all of said testimony and after such objection had been overruled he excepted specifically to the statement "and a number of other thieves." The trial court realized the injurious effect of the remark and did all he could to remedy it by immediately instructing the jury to disregard it. Of course the State could not have proven that appellant's associates were "thieves" and was not attempting to do so, but the witness' voluntary statement nevertheless had the effect of telling the jury that not only were appellant's associates thieves but that appellant himself was a thief. That was exactly what the State was attempting to establish and the voluntary statement of the officer strongly supported the facts on that issue which the State had proved. However unintentional may have been the purpose of the representatives of the State to elicit such a statement from the witness, the harmful effect to appellant was the same. It placed appellant in such an unfavorable light before

the jury that we fail to see how its bad effect could be removed by the instruction of the court. The rule supported by many authorities seems to be that if the illegal testimony is not of a very material character and is not likely to prejudice the jury against the defendant the error may be cured by withdrawing it from the jury, but if the illegal testimony was calculated to influence or affect the jury adversely to the defendant the withdrawal of it will not cure the error. Branch's Ann. Texas P. C., Sections 382 and 383, and cases there cited, among them being Williford v. State, 36 Texas Crim. Rep. 414, 37 S. W. 761.

Appellant's motion for rehearing is granted, the judgment of affirmance is set aside and the judgment of the trial court is now reversed and the cause remanded.