**Delbert Barney BUCKELEW, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 41386.

Court of Criminal Appeals of Texas.

June 26, 1968.

Don Metcalfe, Dallas, for appellant.

Henry Wade, Dist. Atty., Douglas Mulder, John Vance, Kerry FitzGerald and Ronald W. Chapman, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

The offense is Murder; the punishment, assessed by the jury, 75 years confinement in the Texas Department of Corrections.

The indictment charged appellant with killing Grace Buckelew (his wife) "by hitting, striking and beating her with his hands and fists."

The State's evidence reflects that upon arriving home from work on April 17, 1966, appellant, after talking to Donald Green, his five-year-old stepson, severely beat his wife about her head and other parts of the body. Subsequently that evening appellant left the apartment with a knife accompanied by Donald. He returned some 30 minutes later with his eyes swollen and stated to his stepchildren, "Look, what your mama made me do" and "Isn't this pretty?". Following his return he threw the deceased from a couch onto the floor and started hitting her again. After the beating he pulled the deceased into a bedroom and put her in the children's bed.

Sharon Green, appellant's 10-year-old stepdaughter and the principal witness for the State, testified that she was awakened the following morning by appellant "fussing at Mama." She related that when she went with appellant to buy beer early that morning he had inquired " * * * if Mama was to die who would I go with, his mother or grandmother."

Sharon related that upon her return from school that day she found her mother lying down and groaning in the front bedroom. Later, while on the apartment steps she heard a "bump" and returned to find her mother on the floor. Upon another return to the apartment, a few moments later, she saw the decedent on a bed with her eyes open, not breathing, apparently dead.

Appellant then left the apartment followed by his three stepchildren and called the fire department from a nearby grocery store telling them that a heart attack had occurred at the apartment in question and he was Lyndon B. Johnson. The foursome then went by taxi to the bus station where appellant was subsequently arrested.

Mrs. Bessie Green of Tyler, the children's paternal grandmother, testified that appel-

lant called and told her he was putting the children on the bus to Tyler; that after saying his wife had had a heart attack, he said "I think I have killed her" and that he "hit her pretty hard."

The Medical Examiner testified the cause of death was injuries resulting in a subdural hemorrhage of the brain with cerebral edema, fracturing of the jaw and numerous abrasions on the body. He related that such injuries were consistent with the hitting, striking and beating of a person by the hands and fists of another individual, but were not compatible with a fall.

Testifying in his own behalf, appellant acknowledged that he had severely beaten his wife after he had learned from his stepson that a man had visited his apartment that morning and his wife had gone to the man's apartment that afternoon. He related that his stepson had led him to the man's apartment where he discovered the man was his co-worker; that in the fight that ensued he was badly beaten and relieved of his knife. He denied having hit his wife upon his return to his own apartment that night or the next day. He testified that he did not work the next day, that he and his wife drank beer all day and that when she fell twice the afternoon of her death he thought she was having a heart attack.

In his sole ground of error appellant contends the trial court erred in failing to grant a mistrial "after the jury had heard hearsay testimony that the defendant had three years prior to the offense broken his wife's jaw."

The matter arose in the following manner.

On cross-examination appellant denied breaking his wife's jaw, denied knowing that she ever had a broken jaw or had ever gone to a doctor "for a broken jaw."

In rebuttal the State recalled Sharon Green who testified that three years previously appellant had broken the deceased's jaw. Such testimony, the State contends, was offered under the provisions of Article 1257a, Vernon's Ann.P.C. No objection was made to such testimony; the witness was asked one question on cross-examination and excused. Appellant then attempted to call another witness but apparently was unsuccessful.

Immediately thereafter Sharon Green was called as a defense witness. [It may have been that she was merely being recalled for further cross-examination, but the record, as approved, reflects otherwise.] What followed is best described by this excerpt from the transcription of the court reporter's notes:

"Q. Sharon, let me ask you this, if I may. You just testified that D. B. hit your mama, Grace Buckelew, in the jaw and you thought that it broke her jaw.

"A. Yes.

"Q. When did he do that? Right after she had hit him on the head with a beer bottle?

"A. I don't know.

"Q. Well, why do you say you don't know, Sharon, weren't you there, or what?

"A. I was at Grandmother's.

"Q. You didn't actually see that happen, is that correct?

"A. Yes.

"Q. I see. Then what you know about it then, is what somebody else has told you?

"A. Yes, sir.

"MR. METCALFE: Thank you, Sharon. That will be all.

CROSS EXAMINATION

BY MR. MULDER:

"Q. Who told you about that, Sharon?

"A. My mother.

"MR. METCALFE: Your Honor, we will object to this, and we will ask that the jury be instructed not to consider it for any purpose. This is testimony that is hearsay. It is outside of the presence of this defendant, and—

"THE COURT: Sustain the objection, and I will instruct the jury to disregard it, ladies and gentlemen, for any purpose.

"MR. VANCE: Judge, we submit at this time the only person that can tell about this, other than the deceased, thanks to this defendant, is this little girl that has brought this information into court from the deceased, and this is the only way it can be proven.

"THE COURT: Counsel, the Court has already ruled on it.

"MR. METCALFE: At this time, we move the Court for a mistrial because of this.

"THE COURT: Overrule your motion.

"MR. METCALFE: Note our exception."

It is observed from the foregoing that once it was established that Sharon's testimony as to a previous broken jaw was hearsay, and not admissible (except, perhaps, if appellant had so informed her), appellant made no objection or effort to have the same excluded. Only after the State had established that her mother had told her of the injury was an objection offered. Appellant, however, contends that timely objection was made, quoting in part from 1 McCormick and Ray, "Texas Law of Evidence," 2nd Ed., p. 21, Sec. 23.

"The objection must be made as soon as the ground of objection becomes apparent. * * * [T]he ground of objection may become apparent for the first time during the later course of the trial. In all of these situations counsel is permitted to make an objection as soon as the ground appears."

Be that as it may, the court, in the case at bar, sustained the objection and promptly instructed the jury to disregard the evidence. The question now presented is whether such action was sufficient to cure the error.

In Music v. State, 135 Tex.Cr.R. 522, 121 S.W.2d 606, at p. 609, this Court stated:

"The rule supported by many authorities seems to be that if the illegal testimony is not of a very material character and is not likely to prejudice the jury against the defendant the error may be cured by withdrawing it from the jury, but if the illegal testimony was calculated to influence or affect the jury adversely to the defendant the withdrawal of it will not cure the error." See Wheeler v. State, Tex.Cr.App., 413 S.W.2d 705.

Appellant contends that the illegal testimony was calculated to affect the jury adversely on (1) the issue of malice—by showing a previous "bad" relationship between appellant and deceased, (2) the credibility of the appellant as a witness, and (3) the manner in which the death was caused.

It is observed that Sharon Green also testified on direct examination, without objection, that it was not unusual for appellant to "beat" her mother and that "this sort of thing" had been going on more than once a week for nearly two years.

On cross-examination appellant's counsel elicited from Sharon Green the fact that the instant occurrence was not the first time appellant had hit her mother, but that on these previous occasions he had not beaten her as badly as he had this particular time.

Appellant, on cross-examination, admitted having "hit" his wife before, and having "whipped" her "a couple of weeks before" her death.

When appellant's denial that he had ever broken his wife's jaw and Sharon's ad-

**16**

mission that her statement was based on hearsay is considered in light of all the testimony which was before the jury, it is our conclusion that the withdrawal of the hearsay evidence from the jury cured the error. Cf. Tetrault v. State, Tex.Cr.App., 375 S.W.2d 726.

While the prosecutor's remarks in the presence of the jury at the time of the appellant's objection to the hearsay testimony were uncalled for, such remarks were not complained of in the ground of error. While neither party should offer testimony known to them to be inadmissible, we find nothing to suggest that the State knew in advance that Sharon's testimony was hearsay, particularly since it was undisputed that she had lived with appellant and her mother for approximately five years prior to the offense charged.

Finding no reversible error, the judgment is affirmed.