In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00027-CR
______________________________

ANTHONY HAYNES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee

                                              

On Appeal from the 177th Judicial District Court
Harris County, Texas
Trial Court No. 976792

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

            On October 5, 2004, Anthony Haynes waived a jury trial and pled guilty to aggravated
robbery. See Tex. Pen. Code Ann. § 29.03 (Vernon 2003). There was no negotiated plea
agreement in the case. The trial court ordered the preparation of a presentence investigation (PSI)
report and rescheduled the case for a sentencing hearing December 15, 2005. On that subsequent
date, after hearing evidence and argument, the trial court set Haynes' punishment at thirty years'
imprisonment. Haynes timely appealed, and his appeal was transferred to this Court pursuant to the
Texas Supreme Court's docket equalization order. See Tex. Gov't Code Ann. § 73.001 (Vernon
2005).
            On March 14, 2005, Haynes' appellate counsel filed an Anders

 brief in which counsel
professionally discussed the record, described the issues reviewed, and concluded there were no
arguable grounds for appeal. As required by Anders, counsel also filed a motion to withdraw. 
Counsel also sent Haynes a copy of the appellate brief and informed him of the right to file a
response pro se and of the right to review the record. 
            This Court informed Haynes that a response, if any, was due by April 14, 2005. We
subsequently granted two extensions of time for Haynes to file a responsive brief, the last extension
expiring June 16, 2005. As of this date, we have not received a response from Haynes. The State
informed us by way of a letter brief filed March 24, 2005, that it had reviewed the record in this case
and that it concurs with Haynes' counsel's assessment of the appeal.
            We have independently reviewed the record and the brief filed by counsel in this appeal, and
we agree there are no arguable issues that would support an appeal in this case. The indictment in
this case tracks the statutory language, and we have found nothing vague or ambiguous in its
language that might be said to deprive Haynes of adequate notice of the charge against him. See
generally Daniels v. State, 754 S.W.2d 214, 217–18 (Tex. Crim. App. 1988) (indictment drafted in
language of statute ordinarily sufficient). The record demonstrates Haynes' guilty plea was
knowingly and voluntarily entered, inasmuch as Haynes received the required statutory warnings—in
writing—before the trial court accepted Haynes' plea, and his judicial confession is direct and
unequivocal. See Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2004–2005); cf. Thompson
v. State, 59 S.W.3d 802 (Tex. App.—Texarkana 2001, pet. ref'd) (reviewing requirements that pre-plea admonishments substantially comply with Article 26.13). The trial court assessed punishment
at  thirty  years'  imprisonment,  which  is  within  the  range  provided  for  aggravated  robbery,  a
first-degree felony. See Tex. Pen. Code Ann. § 12.32(a) (Vernon 2003) (first-degree felony
punishment); Tex. Pen. Code Ann. § 29.03(b) (aggravated robbery is first-degree felony).
            At the hearing on punishment, Josue Pedraza testified for the State. Pedraza was the victim
in another aggravated robbery, for which the State had indicted Haynes—an indictment which was
subsequently dismissed because Haynes pled guilty in the case now on appeal. Pedraza told the trial
court he had been fueling his truck on the early morning of January 23, 2004, when he was
approached by Haynes and an accomplice. Haynes was carrying a "cut-off" twelve-gauge shotgun. 
Haynes pointed the gun at Pedraza and demanded the latter's money. Before Pedraza could respond,
Haynes shot Pedraza in the arm. As a result, Pedraza's arm was severely injured; he has had at least
five surgeries to repair the damage caused by being shot and has lost much of the use of that arm. 
            Haynes testified on his own behalf. Haynes denied being part of the robbery that resulted in
Pedraza being shot, and Haynes claimed he was not in the area at the time of that crime. Instead,
Haynes claimed he was responsible only for the robbery to which he had pled guilty, and he then
asserted that he acted only as a lookout for that crime. 
            It is not clear from the record before us whether Pedraza's testimony about the extraneous
offense influenced the trial court's punishment decision. The trial court, however, is in the best
position to determine the credibility of witnesses and to weigh the testimony given at trial. See
Jimerson v. State, 957 S.W.2d 875, 879 (Tex. App.—Texarkana 1997, no pet.). If the trial court
found Pedraza's testimony to be credible and persuasive, such a decision was certainly within the
court's sound discretion.
 
 
 
            Because the punishment assessed was within the range provided for by statute and there is
nothing in the record before us to suggest error, we affirm the trial court's judgment.

                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          September 14, 2005
Date Decided:             September 15, 2005

Do Not Publish

ticulated in Rule 44.2 of the Texas Rules of Appellate Procedure. Id. at 909; see
Tex. R. App. P. 44.2. We will review the record concerning these matters. 

 A. Valid Legal Claim

 As a preliminary matter, we analyze the State's first argument that Garrett's statement,
"[t]here was a filly . . . in pretty bad shape . . . [that] later died," did not constitute extraneous offense
evidence. During the guilt/innocence phase, Rule 404(a) of the Texas Rules of Evidence prohibits
the use of character evidence "on the ground that it is generally 'laden with the dangerous baggage
of prejudice, distraction, time consumption and surprise.'" Sims v. State, No. PD-1575-07, 2008 Tex.
Crim. App. LEXIS 820, at *5 (Tex. Crim. App. July 2, 2008); see Tex. R. Evid. 404(a). Character
evidence such as extraneous offense evidence "tends to confuse the issues," "weigh[s] too much with
the jury and . . . overpersuade[s] them as to prejudge one with a bad general record and deny him a
fair opportunity to defend a particular charge." Id. 

 An extraneous offense is defined as any "act of misconduct that . . . is not shown in the
charging papers." Coffel v. State, 242 S.W.3d 907, 909 (Tex. App.--Texarkana 2007, no pet.)
(citing Rankin v. State, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996)). The statement must have
reflected a crime or bad act to which Clayton was connected. See Moreno v. State, 858 S.W.2d 453,
463 (Tex. Crim. App. 1993). This trial was to determine if Clayton failed unreasonably to provide
food, water, or care for a livestock animal in his custody. The defense was that this horse had access
to food and water and was old, sick, and likely died of disease, age, or other causes unrelated to
Clayton's lack of provision of food and water.

 Evidence was presented that several other horses were observed on this same property subject
to the care of Clayton. The fact that one of these other horses died because it was in "pretty bad
shape" and "should have been seized" clearly implies that Clayton neglected to provide for other
horses, making the argument that the horse in question died from a cause, other than starvation,
much less persuasive. The statement implied that Clayton committed a violation of the law leading
to the death of another horse, for which he was not charged. We agree with the trial court's
assessment that the statement constituted extraneous offense evidence. 

 The State next argues that, since Clayton never obtained a ruling on his motion for discovery
asking the State to disclose its intent to use extraneous offense evidence, the State had no duty to do
so. We need not address the State's position because, as remains uncontested, the duty was imposed
by the trial court's granting of the motion in limine and admonishment to the State to warn its
witnesses not to discuss any extraneous offense evidence without prior ruling from the court. 

 By arguing that Garrett's insertion of an extraneous offense denied Clayton the
constitutionally protected right of a criminal defendant to a fair and impartial trial, as is required in
order to obtain due process, Clayton articulated a valid claim in his motion for new trial. 

 B. Evidence in the Record Substantiated the Claim 

 The record has previously been cited showing that, during the trial, one of the State's
witnesses, by a nonresponsive answer on cross-examination, stated that another horse on the property
owned or leased by Clayton also was in "bad shape" and died. Clayton's attorney promptly objected
and the trial court attempted to rectify the harm by instructing the jury to disregard the testimony. 
At that time, the trial court denied a motion for mistrial, but later granted a motion for new trial. The
trial court stated that it had granted a motion in limine to prevent this type testimony from being
presented without giving the court an opportunity to specifically rule on the evidence. The record
reveals that Clayton's claim is substantiated by evidence in the trial court record. 

 C. Harm or Prejudice 

 As required by Rule 44.2(b) of the Texas Rules of Appellate Procedure, we are to determine
if Garrett's statement affected Clayton's substantial rights. A substantial right is not affected and the
error is harmless if, after reviewing the entire record, we determine that the error did not influence,
or had only a slight influence, on the trial outcome. Montez v. State, 975 S.W.2d 370, 373 (Tex.
App.--Dallas 1998, no pet.). "A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). 

 This was accomplished in response to the State's contention that the trial court's instruction
to the jury to disregard the extraneous evidence was sufficient to cure any error, thus removing the
need for new trial. The particular instruction given was as follows:

 [T]here may be times when I would instruct you to disregard certain evidence. We
have now come to a situation like that. In response to the last question of defense
counsel, Mr. Shelton, the officer testified that there was a, the death of another horse
on the premises. I am hereby instructing you to disregard that statement regarding
the death of any other horse in connection with this case. You are not to consider
that statement as evidence in this case. You further are not to consider that statement
for any purposes whatsoever in arriving at your verdict in this case.

 Extraneous offenses "can be rendered harmless by an instruction to disregard by the trial
judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is
of such damning character as to suggest it would be impossible to remove the harmful impression
from the jury's mind." Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); see Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). In a majority of cases, the evidence complained
of has little relevance to any material issue in the case, such that a prompt instruction to disregard
will ordinarily cure any prejudicial effect. State v. Boyd, 202 S.W.3d 393, 402 (Tex. App.--Dallas
2006, pet. ref'd). However, an instruction to disregard will not cure the error of improperly inserted
evidence of an extraneous offense when that evidence establishes exactly what the State is trying to
prove. Id. at 402-03 (citing Music v. State, 135 Tex. Crim. 522, 528, 121 S.W.2d 606, 609-10
(1938). 

 At the hearing on the motion for new trial, the court stated:

 I did try to cure the error by instructing the jury to disregard, but I have to conclude
that this type of evidence was highly material to the jury. And since they were
confronted with the issue of whether or not to convict based upon whether the
defendant had failed to provide care or whether or not . . . the horse had simply died
from old age or some other unrelated cause. A second dead horse was extremely
vital and material evidence to show that the defendant had knowledge that horses
were dying out there and that he should have been taking steps to care for them. . . . 
So it's not the kind of evidence that I think that I, that's curable by instruction. 

In other words, the trial court found that Garrett's statement went "to the very heart of the case,"
hindered Clayton's constitutional right to a fair trial, and contributed to his conviction. As the trial
court noted, Clayton was harmed because he was essentially put in a position to defend the allegation
that another horse died while in his care. Since Clayton was not provided notice of the extraneous
offense, he would not have been able to "investigate, prepare, or defend" the issue. This is exactly
the type of situation Rule 404(b) of the Texas Rules of Evidence was adopted to prevent. 

 The record shows that the trial court reviewed the trial record prior to ruling on the motion
for new trial. After duly considering the issue, the trial court clearly enunciated a proper ground for
the granting of the new trial, stating: "A second dead horse was extremely vital and material
evidence to show that the defendant had knowledge that horses were dying out there and that he
should have been taking steps to care for them . . . ." 

 "[T]he trial court was in the best position to assess the effect of its instruction to the jury. 
As a result, it was not outside the zone of reasonable disagreement for the trial court to conclude the
instruction to disregard," did not cure the error caused by the introduction of the extraneous offense. 
Boyd, 202 S.W.3d at 403-04. 

 Since Clayton successfully met the Herndon requirements while the State failed to meet its
burden to prove error, we cannot say that the trial court abused its discretion in granting the new trial. 
215 S.W.3d 901.

III. Conclusion

 We affirm the decision of the trial court in granting the new trial. 

 Jack Carter

 Justice

Date Submitted: February 10, 2009

Date Decided: February 11, 2009

Do Not Publish

1. Tex. Penal Code Ann. 42.09(2) (Vernon Supp. 2008) (cruelty to livestock animals)
(class A misdemeanor).