In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00198-CR


______________________________




THE STATE OF TEXAS, Appellant



V.



JAMES LEROY CLAYTON, Appellee




 


On Appeal from the County Court at Law


Cass County, Texas


Trial Court No. CCLM080081




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 James Leroy Clayton was charged with failing to provide necessary food, water, care, and/or
shelter to a bay mare horse. (1) During a "hotly contested" trial, the State's witness injected extraneous
offense evidence in violation of the trial court's motion in limine. Based on the prejudicial nature
of the statement, which implied that Clayton's failure to properly care for a different horse led to its
death, the trial court granted a post-verdict motion for new trial. The State appealed the trial court's
ruling on the sole question of whether the grant of a new trial constituted error. We find this case
illustrates a proper exercise of judicial discretion by a trial court and affirm the judgment. 

I. Factual and Procedural Background 

 Edward Homer, Jr., Clayton's neighbor, was driving past Clayton's property and noticed "two
of the horses was [sic] down." According to Homer, there was no food or water on the property, "the
horses were thin," and "you could see the ribs on all of them." Homer called Deputy George Bates,
who went to the property and saw a mare lying on the ground, struggling to rise. Bates also noticed
that there was no water on the property and that some of the horses appeared thin. He called
Investigator John Garrett, who drove to the property only to discover that the mare had died. Garrett
also claimed there was no food or water within view, and decided to feed the other twelve horses on
the property. 

 Veterinarian Mike Dodd was contacted to conduct an autopsy on the dead mare. It revealed
that the mare had no fat or muscle, prominent hip bones, and was infested with live parasites. Dodd
concluded the mare was "severely emaciated" and "likely died from malnutrition and a heavy parasite
load." Clayton was arrested after the autopsy was released and was charged with cruelty to animals.

 Prior to trial, Clayton filed a motion for discovery requesting the State to provide him with
notice of any evidence of other crimes, wrongs, or acts pursuant to Rule 404(b) of the Texas Rules
of Evidence. A motion in limine excluding all extraneous crimes or conduct of which Clayton did
not receive prior notice was granted. During a discourse held in the trial court's chambers, Clayton
expressed concerns that the State's witnesses might speak of extraneous offenses in violation of the
motion in limine. At that time, the State was instructed to admonish its witnesses in order to prevent
them from discussing any extraneous offenses without the matter being first brought to the trial
court's attention.

 During cross-examination of the State's witness, Garrett, the following discussion ensued
regarding other horses on the property: 

 Q. [By Clayton's counsel] What was the condition of those horses?


 A. [By Garrett] Most of them were in poor condition. There might have
been one or two horses that were not in as bad condition as the other, but for the most
part it was pretty poor.


 . . . . 


 Q. [By Clayton's counsel] And you determined that it was not necessary
to seize the rest of these horses?


 A. [By Garrett] There was a filly there that was in pretty bad shape and
I probably should have seized her. And that's my mistake, I didn't, because I think
she later died. 


Clayton's counsel promptly objected to the question and argued at the bench that Garrett had
volunteered information going to "the very matter that [he] was speaking to the Court about, about
other animals dying." While Clayton's counsel alleged this was a violation of the motion in limine,
the State argued Clayton had opened the door to the statement. Although the trial court dismissed
the State's argument in ruling that Garrett's answer was nonresponsive, the court determined the
matter could be cured by instruction. Specifically, the trial court stated, "The only statement made
by the witness was that a horse died. He didn't expound on what the causation was . . . so I'm going
to give an instruction to the jury to disregard that last statement of the witness." Clayton's motion
for mistrial was denied, and a "hotly contested" trial continued. 

 Through the State's witnesses, Clayton established there was some grass and water on the
property. State's witness Alton McWaters, who sold the mare to Clayton, described the eighteen-year-old mare as lame from an injury to her left front ankle. He stated she limped badly, could not
get around, and had to be specially fed. McWaters said the mare was underweight due to her age and
also because she was a thoroughbred racehorse. Dodd noted there was grass in the mare's stomach
and fecal matter was present, indicating the mare had eaten. He admitted there could have been other
causes for the mare's death. 

 Clayton also introduced witness Michael Jordan, who took care of Clayton's horses. Jordan
described the property as a twenty- to thirty-acre piece of land with two water ponds and a well shed
containing grain. It was Jordan's duty to feed the horses every day. Because the grass on the
property was poor, Jordan kept three rolls of hay at the back of the property for the animals to feed
on in addition to the grain. The testimony was significant since Garrett testified he knew there were
storage buildings on the property but did not investigate to see if they contained grain, and did not
walk the property to identify natural water sources. 

 Like State's witness McWaters, Jordan described the mare as old and poor. He testified she
had an injury to her front leg and ankle and had a rear leg that was "messed up" when she was being
unloaded from a trailer. Because the mare was the descendant of Native Dancer, an award-winning
racehorse that placed in the Kentucky Derby, Clayton wanted the mare to produce a colt, implying
that Clayton had a motive to keep the mare in good condition. Jordan fed her separately and testified
she was able to eat. The mare was wormed twice, once when purchased and again a week or two
prior to her death. Clayton had been in the hospital the two days prior to the mare's death. Noting
that the mare was having problems in the days leading up to her death, Clayton and Jordan had
decided to "put her down" if she did not get better. According to Jordan, the mare had died before
they called the veterinarian. 

 At the conclusion of the evidence, the jury found Clayton guilty, and the court sentenced him
to pay a $2,000.00 fine, costs, and one year's incarceration, consisting of ninety days' actual
confinement in the Cass County jail, followed by nine months' electronic monitoring in the
alternative incarceration program. 

 Clayton timely filed a motion for new trial claiming that Garrett's statement was a violation
of the motion in limine and constituted material error which could not be cured by instruction. At
the hearing, Clayton argued that the statement was made more egregious by the fact that it was not
true. The court stated it "came very close to granting a . . . mistrial" because "[t]here was no question
in [its] mind even at the time that the statement was made . . . [it was] in violation of the motion in
limine and that it was non-responsive to the question." The trial court found the statement by Garrett
that another animal died was an extraneous offense that went "to the very heart of the case," which
was "whether or not the bay mare horse in question died as a result of lack of care or died from
natural causes." The trial court decided it was "certainly . . . highly, highly prejudicial for a fact
finder or a jury to hear that another horse in the same location, in the same place, in a short period
of time thereafter, died while under the care of the defendant," and granted the motion for new trial. 

 The State now appeals the order granting a new trial and argues: 1) Garrett's statement was
not extraneous offense evidence; 2) the State had no duty to provide Clayton with notice of its intent
to use extraneous offense evidence; and 3) the instruction given to the jury cured any error. See Tex.
Code Crim. Proc. Ann. art. 44.01(a)(3) (Vernon Supp. 2008). 

II. Standard of Review

 "For more than one hundred and twenty years, our trial judges have had the discretion to
grant new trials in the interest of justice," and that decision is reviewed only for an abuse of
discretion. State v. Herndon, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). In order to overturn
the order granting a new trial, we must decide that the trial court acted without reference to guiding
rules or principles or was outside the zone of reasonable disagreement. Id. at 907; Edwards v. State,
37 S.W.3d 511, 515 (Tex. App.--Texarkana 2001, pet. ref'd). In deciding this issue, we will not
substitute our judgment for that of the trial court, but will only determine if the decision was arbitrary
or unreasonable. State v. Kelley, 20 S.W.3d 147, 150 (Tex. App.--Texarkana 2000, no pet.). The
ruling of the trial court is presumed correct, and the burden in this case rests on the State to prove
otherwise. Id. at 150-51.

 Having heard the evidence and being present to observe the dynamics of the trial, the trial
court is in a much better position than an appellate court to evaluate the impact on a jury when
inadmissible evidence is injected into the record. The State would have us review the case as if the
trial court had exercised its discretion by denying the new trial and only instructing the jury to
disregard the testimony. When a trial court denies the motion for mistrial or new trial, for the
appellate court to reverse, it essentially must conclude the error was established as a matter of law. 
In that event, merely instructing the jury to disregard the evidence is insufficient to cure the error and
would be outside the scope of the discretion allowed. This type of review requires the appellate
court to balance the magnitude of the probable effect of the evidence on the jury against the probable
efficacy of an instruction to disregard. See Hardin v. State, 20 S.W.3d 84, 93 (Tex.
App.--Texarkana 2000, pet. ref'd). By contrast, here, the trial court exercised its discretion to grant
the motion for new trial. In that instance, reversible error need not be established as a matter of law. 
Herndon, 215 S.W.3d at 907. When the trial court grants a motion for new trial, the Texas Court
of Criminal Appeals has held that there is generally no abuse of discretion if: (1) the defendant
articulated a valid legal claim in the motion for new trial, (2) evidence in the trial record
substantiated the legal claim, (3) and there is a showing the defendant's rights were prejudiced under
the standards articulated in Rule 44.2 of the Texas Rules of Appellate Procedure. Id. at 909; see
Tex. R. App. P. 44.2. We will review the record concerning these matters. 

 A. Valid Legal Claim

 As a preliminary matter, we analyze the State's first argument that Garrett's statement,
"[t]here was a filly . . . in pretty bad shape . . . [that] later died," did not constitute extraneous offense
evidence. During the guilt/innocence phase, Rule 404(a) of the Texas Rules of Evidence prohibits
the use of character evidence "on the ground that it is generally 'laden with the dangerous baggage
of prejudice, distraction, time consumption and surprise.'" Sims v. State, No. PD-1575-07, 2008 Tex.
Crim. App. LEXIS 820, at *5 (Tex. Crim. App. July 2, 2008); see Tex. R. Evid. 404(a). Character
evidence such as extraneous offense evidence "tends to confuse the issues," "weigh[s] too much with
the jury and . . . overpersuade[s] them as to prejudge one with a bad general record and deny him a
fair opportunity to defend a particular charge." Id. 

 An extraneous offense is defined as any "act of misconduct that . . . is not shown in the
charging papers." Coffel v. State, 242 S.W.3d 907, 909 (Tex. App.--Texarkana 2007, no pet.)
(citing Rankin v. State, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996)). The statement must have
reflected a crime or bad act to which Clayton was connected. See Moreno v. State, 858 S.W.2d 453,
463 (Tex. Crim. App. 1993). This trial was to determine if Clayton failed unreasonably to provide
food, water, or care for a livestock animal in his custody. The defense was that this horse had access
to food and water and was old, sick, and likely died of disease, age, or other causes unrelated to
Clayton's lack of provision of food and water.

 Evidence was presented that several other horses were observed on this same property subject
to the care of Clayton. The fact that one of these other horses died because it was in "pretty bad
shape" and "should have been seized" clearly implies that Clayton neglected to provide for other
horses, making the argument that the horse in question died from a cause, other than starvation,
much less persuasive. The statement implied that Clayton committed a violation of the law leading
to the death of another horse, for which he was not charged. We agree with the trial court's
assessment that the statement constituted extraneous offense evidence. 

 The State next argues that, since Clayton never obtained a ruling on his motion for discovery
asking the State to disclose its intent to use extraneous offense evidence, the State had no duty to do
so. We need not address the State's position because, as remains uncontested, the duty was imposed
by the trial court's granting of the motion in limine and admonishment to the State to warn its
witnesses not to discuss any extraneous offense evidence without prior ruling from the court. 

 By arguing that Garrett's insertion of an extraneous offense denied Clayton the
constitutionally protected right of a criminal defendant to a fair and impartial trial, as is required in
order to obtain due process, Clayton articulated a valid claim in his motion for new trial. 

 B. Evidence in the Record Substantiated the Claim 

 The record has previously been cited showing that, during the trial, one of the State's
witnesses, by a nonresponsive answer on cross-examination, stated that another horse on the property
owned or leased by Clayton also was in "bad shape" and died. Clayton's attorney promptly objected
and the trial court attempted to rectify the harm by instructing the jury to disregard the testimony. 
At that time, the trial court denied a motion for mistrial, but later granted a motion for new trial. The
trial court stated that it had granted a motion in limine to prevent this type testimony from being
presented without giving the court an opportunity to specifically rule on the evidence. The record
reveals that Clayton's claim is substantiated by evidence in the trial court record. 

 C. Harm or Prejudice 

 As required by Rule 44.2(b) of the Texas Rules of Appellate Procedure, we are to determine
if Garrett's statement affected Clayton's substantial rights. A substantial right is not affected and the
error is harmless if, after reviewing the entire record, we determine that the error did not influence,
or had only a slight influence, on the trial outcome. Montez v. State, 975 S.W.2d 370, 373 (Tex.
App.--Dallas 1998, no pet.). "A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). 

 This was accomplished in response to the State's contention that the trial court's instruction
to the jury to disregard the extraneous evidence was sufficient to cure any error, thus removing the
need for new trial. The particular instruction given was as follows:

 [T]here may be times when I would instruct you to disregard certain evidence. We
have now come to a situation like that. In response to the last question of defense
counsel, Mr. Shelton, the officer testified that there was a, the death of another horse
on the premises. I am hereby instructing you to disregard that statement regarding
the death of any other horse in connection with this case. You are not to consider
that statement as evidence in this case. You further are not to consider that statement
for any purposes whatsoever in arriving at your verdict in this case.


 Extraneous offenses "can be rendered harmless by an instruction to disregard by the trial
judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is
of such damning character as to suggest it would be impossible to remove the harmful impression
from the jury's mind." Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); see Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). In a majority of cases, the evidence complained
of has little relevance to any material issue in the case, such that a prompt instruction to disregard
will ordinarily cure any prejudicial effect. State v. Boyd, 202 S.W.3d 393, 402 (Tex. App.--Dallas
2006, pet. ref'd). However, an instruction to disregard will not cure the error of improperly inserted
evidence of an extraneous offense when that evidence establishes exactly what the State is trying to
prove. Id. at 402-03 (citing Music v. State, 135 Tex. Crim. 522, 528, 121 S.W.2d 606, 609-10
(1938). 

 At the hearing on the motion for new trial, the court stated:

 I did try to cure the error by instructing the jury to disregard, but I have to conclude
that this type of evidence was highly material to the jury. And since they were
confronted with the issue of whether or not to convict based upon whether the
defendant had failed to provide care or whether or not . . . the horse had simply died
from old age or some other unrelated cause. A second dead horse was extremely
vital and material evidence to show that the defendant had knowledge that horses
were dying out there and that he should have been taking steps to care for them. . . . 
So it's not the kind of evidence that I think that I, that's curable by instruction. 


In other words, the trial court found that Garrett's statement went "to the very heart of the case,"
hindered Clayton's constitutional right to a fair trial, and contributed to his conviction. As the trial
court noted, Clayton was harmed because he was essentially put in a position to defend the allegation
that another horse died while in his care. Since Clayton was not provided notice of the extraneous
offense, he would not have been able to "investigate, prepare, or defend" the issue. This is exactly
the type of situation Rule 404(b) of the Texas Rules of Evidence was adopted to prevent. 

 The record shows that the trial court reviewed the trial record prior to ruling on the motion
for new trial. After duly considering the issue, the trial court clearly enunciated a proper ground for
the granting of the new trial, stating: "A second dead horse was extremely vital and material
evidence to show that the defendant had knowledge that horses were dying out there and that he
should have been taking steps to care for them . . . ." 

 "[T]he trial court was in the best position to assess the effect of its instruction to the jury. 
As a result, it was not outside the zone of reasonable disagreement for the trial court to conclude the
instruction to disregard," did not cure the error caused by the introduction of the extraneous offense. 
Boyd, 202 S.W.3d at 403-04. 

 Since Clayton successfully met the Herndon requirements while the State failed to meet its
burden to prove error, we cannot say that the trial court abused its discretion in granting the new trial. 
215 S.W.3d 901.

III. Conclusion

 We affirm the decision of the trial court in granting the new trial. 



 Jack Carter

 Justice


Date Submitted: February 10, 2009

Date Decided: February 11, 2009


Do Not Publish

1. Tex. Penal Code Ann. § 42.09(2) (Vernon Supp. 2008) (cruelty to livestock animals)
(class A misdemeanor).