In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00044-CR


______________________________




TERRI LYNN STINE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21946




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 A jury found Terri Lynn Stine guilty of burglary of a habitation. After Stine pled true to the
State's enhancement paragraph, the jury assessed punishment, and Stine was sentenced to thirty-five
years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On
appeal, Stine prays this Court set aside her conviction because the trial court erred in admitting
extraneous offense evidence, in not empaneling a separate jury to determine her competence to stand
trial, and because the evidence was legally and factually insufficient to support the conviction. We
disagree with Stine and affirm the trial court's judgment. 

I. Factual and Procedural Background

 Dedria Hartwell spent a Saturday afternoon helping clean her parents' home and yard. On
returning home, Hartwell discovered that her single-wide trailer had been burglarized. A perpetrator
had broken the glass on the back door to gain entry and had stolen several items, including a portable
CD player with headphones, CDs, alarm clock, prom glass, a white jewelry box containing jewelry,
candles, cordless telephone, a Tweety bird poster, and Hartwell's main purse bearing her wallet,
checkbook, credit cards, driver's license, social security card, pearl-handled knife, and other
miscellaneous items. Also, Hartwell's Jack Russell Terrier was missing and her satellite dish was
broken. She called 9-1-1. 

 Hartwell discovered her debit card was used at a Kwik Chek gas station to purchase several
items, and she passed the information to the police, who located her jewelry box in the Kwik Check
garbage can. Officers were also able to recover several other possessions from B.H., a juvenile who
was forced to return the items after her mother noticed them. Hartwell's bank sent her a notification
that a stolen check was made payable to the Dollar General Store shortly after the burglary. 

 Based on B.H.'s police interview claiming Stine broke into the trailer, a warrant for Stine's
arrest was issued. On the day of the incident, B.H. was dating Stine's son Joshua. All three of them
rode in a white Ford F-150 to visit Stine's brother. B.H. testified Stine stopped out in the country,
walked to the back of a trailer, broke the glass on the back door, spent twenty to thirty minutes in the
home, and came back to the truck with a dog and several other items. B.H. stated they went to a gas
station and paid with a credit card or check that did not belong to them. They next stopped at the
Dollar General Store and purchased cleaning supplies and other items with the stolen check. The
dog was dropped off at Stine's brother's home. 

 Diane Garcia was working at Kwik Chek on the day of the incident. She testified Stine filled
her gas tank, got a pack of batteries, a camera, lighters, and a carton of cigarettes. Stine did not have
the debit card with her, so she asked B.H. to bring Hartwell's card to pay for the purchases. During
her testimony, Garcia identified Stine as the person who used the credit card. Garcia recalled that
Stine signed the credit card slip. A copy of the credit card transaction using Hartwell's card was
introduced. 

II. Legal and Factual Sufficiency 

 A. The Hypothetically Correct Jury Charge

 Our analysis of whether the evidence is legally and factually sufficient is measured against
the elements of the offense with the same kind of analysis as that applied in the test for a
hypothetically correct jury charge for the case. (1) Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The
hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant was tried." Malik,
953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. Grotti, 273 S.W.3d at
280-81.

 Under a hypothetically correct charge in this case, the jury was required to find, beyond a
reasonable doubt, that: (1) Stine; (2) intentionally or knowingly; (3) entered Hartwell's habitation;
(4) without her effective consent; and (5) attempted to, or did in fact, appropriate Hartwell's property;
(6) without her effective consent; (7) with intent to deprive her of the property. Tex. Penal Code
Ann. § 30.02(a)(1) (Vernon 2003), § 31.03(a) (Vernon Supp. 2009).

 B. The Evidence Was Legally Sufficient to Support the Verdict 

 The requirement of legal sufficiency confirms that a fact question was raised by the evidence. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was
insufficient to raise an issue of Stine's guilt, there was no issue for the jury's resolution. Id. When
conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to
the verdict and determine whether any rational jury could find the essential elements of burglary of
a habitation as charged by the indictment beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007); Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing
Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Clewis, 922 S.W.2d at 132-33; Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). 

 The issue here is not whether a burglary occurred or whether property was removed from the
victim's home without consent. Instead, Stine argues that the "State failed to establish that it was
Appellant who entered the mobile home, and that it was the Appellant who stole the property from
inside." Reviewing the evidence in a light most favorable to a finding of guilt reveals that B.H.
testified Stine drove to the trailer, walked to the back door, broke it, and entered Hartwell's home. 
B.H. then claimed Stine committed theft by appropriating Hartwell's property and bringing that
property back to the truck. A person acts with intent "with respect to the nature of his conduct . . .
when it is his conscious objective or desire to engage in the conduct . . . ." Tex. Penal Code Ann.
§ 6.03(a) (Vernon 2003). In a burglary prosecution, the specific intent to commit theft may be
inferred from the circumstances. McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989);
Simmons v. State, 590 S.W.2d 137, 138 (Tex. Crim. App. [Panel Op.] 1979). Stine was seen by
Garcia using Hartwell's stolen debit card. The evidence further shows that Hartwell's house was
locked, that a glass window was shattered, that Hartwell's property was taken, and that some of the
property was returned to her by investigators. Based on all of the evidence, we find a rational jury
could find that Stine intentionally or knowingly entered Hartwell's habitation and without Hartwell's
consent appropriated the property with intent to deprive Hartwell of the property. The evidence was
legally sufficient to support the jury's verdict. 

 C. The Evidence Was Factually Sufficient to Support the Verdict 

 Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing
factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine
confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be
clearly wrong and unjust. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997); Harris v. State, 133 S.W.3d 760, 764 (Tex. App.--Texarkana 2004, pet. ref'd). A
clearly wrong and unjust verdict is manifestly unjust, shocks the conscience, or clearly demonstrates
bias. Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). Because factual sufficiency
is an issue of fact, we are not free to reweigh the evidence and set aside the verdict merely because
we feel a different result is more reasonable. Clewis, 922 S.W.2d at 135. 

 The majority of contrary proof came from the testimony of Stine's son Joshua. He testified
the trio was traveling through the country to get to his uncle's house when the F-150 began having
car trouble. B.H. got out of the truck with her purse and proclaimed she had to use the restroom. 
B.H. and Joshua went to the nearest trailer and knocked on the door. When no one answered, B.H.
went to the back door, saw it was open, and entered. Joshua sat in the truck and waited. After ten
minutes, B.H. returned with the purse she had originally taken in. She was not carrying other items. 
Joshua next testified the group made a few stops at different stores and claimed B.H. was making
purchases with her mother's credit card. He stated he was taking Xanax supplied by B.H. so that they
could both get high together that day. The defense also elicited the fact that B.H. believed she would
not be charged if she testified against Stine. 

 Since we have determined the evidence raised issues for the jury's resolution, we will not sit
as the thirteenth juror re-evaluating the weight and credibility of the evidence. Williams v. State, 235
S.W.3d 742, 750 (Tex. Crim. App. 2007); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts
in the testimony, and draw reasonable inferences from basic facts. Johnson, 23 S.W.3d at 7; Clewis,
922 S.W.2d at 133; Bottenfield v. State, 77 S.W.3d 349, 354 (Tex. App.--Fort Worth 2002, pet.
ref'd) (citing Jackson, 443 U.S. at 319). 

 In reviewing all of the evidence in a neutral light, we cannot say the evidence of Stine's guilt
was greatly outweighed by Joshua's testimony exonerating his mother. We find nothing unjust or
shocking about the verdict, and conclude the evidence was factually sufficient to support it. As the
fact-finder, the jury was free to disregard Joshua's testimony, and we must not reweigh the credibility
of conflicting statements.

III. The Trial Court Did Not Err in Allowing Evidence of Allegedly Extraneous Offenses

 An extraneous offense is defined as any "act of misconduct . . . that is not shown in the
charging papers." Coffel v. State, 242 S.W.3d 907, 909 (Tex. App.--Texarkana 2007, no pet.)
(citing Rankin v. State, 953 S.W.2d 740 (Tex. Crim. App. 1996)). The statement must have reflected
a crime or bad act to which Stine was connected. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim.
App. 1993). Except in instances not applicable here, during the guilt/innocence phase, Texas Rule
of Evidence 404(a) prohibits the use of character evidence "on the ground that it is generally laden
with dangerous baggage of prejudice, distraction, time consumption and surprise." Sims v. State, 273
S.W.3d 291, 294 (Tex. Crim. App. 2008); see Tex. R. Evid. 404(a). Character evidence such as
extraneous offense evidence "tends to confuse the issues," "weigh[s] too much with the jury and . . .
overpersuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity
to defend" a particular charge. Id. 

 B.H.'s statement that she went with Stine to "Ace Hardware, and Terri Stine stole, like -- I
don't know if it was bags of --" was interrupted by counsel's extraneous offense objection. The
objection was sustained and the jury was instructed to disregard B.H.'s statement. However,
counsel's motion for mistrial was denied. We interpret Stine's argument, on this matter, to complain
of the trial court's action in overruling the motion for mistrial. 

 Extraneous offenses "can be rendered harmless by an instruction to disregard . . . unless it
appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning
character as to suggest it would be impossible to remove the harmful impression from the jury's
mind." Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); see Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999). In a majority of cases, the evidence complained of has little
relevance to any material issue in the case, such that a prompt instruction to disregard will ordinarily
cure any prejudicial effect. State v. Boyd, 202 S.W.3d 393, 402 (Tex. App.--Dallas 2007, pet. ref'd). 
However, an instruction to disregard will not cure the error of improperly inserted evidence of an
extraneous offense when that evidence establishes exactly what the State is trying to prove. Id. at
402-03 (citing Music v. State, 135 Tex. Crim. 522, 121 S.W.2d 606, 609-10 (1938)). 

 While we employ a case-by-case analysis when deciding whether an instruction is curative,
there are several nonexhaustive, nonexclusive factors this Court has adopted from its review of
numerous Texas Court of Criminal Appeals cases. Hardin v. State, 20 S.W.3d 84, 93 (Tex.
App.--Texarkana 2000, pet. ref'd). Included among the factors we consider in this case are: (1) the
weight of other evidence supporting the decision; (2) nature and form of the question; (3) whether
other evidence concerning the same subject has been admitted; (4) the particular instruction given,
and (5) the harm to the accused as measured by the severity of the sentence. Id. at 93-94; see Sands
v. State, 64 S.W.3d 488, 493 (Tex. App.--Texarkana 2001, no pet.). 

 Here, we have already concluded that other evidence at trial was sufficient to support a
finding of Stine's guilt. The State's question asking what happened after B.H., Joshua, and Stine left
the trailer was not intended to elicit extraneous offense testimony. The State informed the trial court
he was not even aware of this event. Although there was no other evidence presented to demonstrate
Stine stole an item from Ace Hardware, her thirty-five-year sentence, considering a five-year to life
imprisonment range, was less than the mid-range. (2) The trial court promptly sustained the objection
and instructed the jury to disregard the statement of the witness. We conclude the court's instruction
to disregard was curative. The trial court did not err in overruling the motion for a mistrial. 

 Next, B.H. testified Stine gave her some medicine for her headache which made her tired. 
Counsel lodged an extraneous offense objection. The court overruled the objection and motion for
mistrial. B.H. stated she did not know what medication was given to her. 

 We review a trial court's admission of evidence for abuse of discretion. McCarty v. State,
257 S.W.3d 238, 239 (Tex. Crim. App. 2008); Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim.
App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable
disagreement. McCarty , 257 S.W.3d at 239 (citing Zuliani, 97 S.W.3d at 595). Unless there is clear
abuse of the trial court's discretion, its ruling will not be reversed. Id. 

 B.H. initially did not know what medicine was given to her, but when re-called, was able to
remember it was Advil or Tylenol. Because B.H. did not testify about an act of misconduct or a
crime to which Stine was connected, her statement did not demonstrate that an extraneous offense
occurred. See Coffel, 242 S.W.3d at 909. Thus, the trial court did not abuse its discretion in
overruling counsel's objection. 

IV. The Trial Court Did Not Err in Finding No Evidence of Incompetency 


 Stine also objects that the trial court did not follow the proper procedure in determining
whether she was competent to stand trial. A defendant is presumed competent to stand trial unless
proved incompetent by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art.
46B.003(b) (Vernon 2006); Gray v. State, 257 S.W.3d 825, 827 (Tex. App.--Texarkana 2008, pet.
ref'd). Stine was only incompetent to stand trial if she did not have sufficient present ability to
consult with her lawyer to a reasonable degree of rational understanding or a rational and factual
understanding of the proceedings against her. Tex. Code Crim. Proc. Ann. art. 46B.003(a)
(Vernon 2006); Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). 

 "On suggestion that the defendant may be incompetent to stand trial, the court shall determine
by informal inquiry whether there is some evidence from any source that would support a finding
that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004
(Vernon Supp. 2009). Evidence must indicate "recent severe mental illness, at least moderate
retardation, or truly bizarre acts by the defendant" to raise a bona fide doubt in the mind of the trial
judge in order to prompt a court's informal inquiry concerning competency. Gray v. State, 257
S.W.3d at 829. "If after an informal inquiry the court determines that evidence exists to support a
finding of incompetency, the court shall order an examination . . . to determine whether the
defendant is incompetent to stand trial in a criminal case." Tex. Code Crim. Proc. Ann. art.
46B.005 (Vernon 2006). We review the totality of the facts surrounding the trial court's decision on
the issue of competency for abuse of discretion. Gray v. State, 257 S.W.3d at 827 (citing Moore v.
State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)). 

 By noon of the first day of trial, February 10, 2009, the trial court was concerned about Stine
"being high." A drug test was ordered, and Stine tested positive for amphetamines and
methamphetamine. The trial court then declared her bond insufficient and placed her in custody. 

 The first mention of competency from Stine's counsel occurred on Thursday, February 12,
2009, after Stine was found guilty by the jury. Her attorney requested a competency inquiry because
Stine failed to maintain eye contact with him, was extremely jittery, and said she did not understand
him. When Stine's counsel tried to discuss her right to testify during the punishment phase of the
trial, Stine's counsel stated Stine "could not think straight and [was] unable to make any decisions." 
Stine told the court she had physical problems, "schizoaffective and borderline personality" disorder
and could not "hold . . . a complete thought process," because she had not taken her prescription
drugs including Adderall, Seroquel, BuSpar, Lamictal, Avaflex, Mirapex, hydrochlorothiazide,
Lisinopril, Klonopin, and hydrocodone. 

 Stine told the court on that day that she understood the jury found her guilty, that the trial was
in the punishment phase, and that she understood the range of punishment. Stine also said she would
be in a better position if she received her medication. A transportation officer was questioned about
Stine's behavior, which he claimed was consistent throughout the week of the trial. A community
supervision officer who monitored Stine's community supervision for a prior offense testified Stine
reacted similarly when she discovered the State was filing a motion to revoke her community
supervision for the previous offense. Once again, the trial court ordered her to take a drug test on
that Thursday. The results of the Thursday drug test likewise were positive for amphetamines and
methamphetamine. The next day, her counsel reported that Stine was "extremely sleepy and more
concerned with resting than really conversing with me." By that time, Stine stated that she had some
of her prescribed medication, brought to her by a family member. She requested that the punishment
trial not begin until that afternoon. 

 Instead, the trial court continued the trial until the next week and ordered a psychiatrist,
Dr. Charles Keenan, to make a "mental-health assessment and initial evaluation and screening to
ascertain whether he thinks there's any other issues, other than medication." The trial court was clear
that this was "not a full-blown competency" determination. Keenan met with Stine over the weekend
once for forty-five to fifty minutes and another time for fifteen minutes before discussing his findings
with the trial court. He relayed to the court that Stine had not slept for a week, was exhausted, and
did not have her medication when she was first examined on Friday. Stine was allowed to rest and
receive her medication over the weekend. Although Keenan did not do a complete competency
examination, he testified Stine knew where she was on that Monday, knew why she was in court,
who the attorneys were, and seemed to understand the proceedings as she had some questions about
the difference in the two phases of trial. Keenan concluded Stine would have no difficulty
discussing matters with her attorney and that she was "competent to continue." After the
transportation officer's statement that Stine was in much better shape, the trial court concluded there
was no evidence to support Stine's incompetence. Specifically, in the court's opinion, the issue was
one of Stine's failure to take medication and get rest, not whether she was competent to stand trial. 

 Here, the trial court, on suggestion by the defendant, properly considered the issue of
incompetency. Stine appeared to be "fidgety" during the trial, prompting the trial court to require
drug testing, which returned positive results. Later, it was shown that Stine had been prescribed
some prescription medication, some of which she had not taken as prescribed. The trial court
attempted to determine whether Stine was "high" or if some other problem existed. After the
competency issue was raised by defense counsel and despite being in the middle of a jury trial, the
trial court recessed the trial, appointed a psychiatrist to do an evaluation of Stine so that the trial
court could determine by informal inquiry whether there was evidence to support a finding that Stine
might be incompetent. No such evidence was presented. We believe the actions of the trial court
in this instance fully complied with the statutory requirements. 

 Given the evidence presented to the trial court in its informal inquiry, we conclude the trial
court did not abuse its discretion in determining that there was no issue as to Stine's competency to
stand trial. 


V. Conclusion 

 

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: October 12, 2009

Date Decided: October 21, 2009


Publish

1. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
2. Stine's criminal record was admitted which included six additional (felony and
misdemeanor) convictions. 


Garcia's car. Utilizing this theory, Moncier would have been motivated to fabricate the
story very soon after the two men left him on the street, before Moncier called the police. Therefore,
the statement Moncier made to Cornett later certainly postdated the motive to lie, rendering the
statement outside Rule 801(e)(1)(B). We find the trial court erred in admitting Cornett's consistent
statement.
            Error committed by the trial court in the admission of evidence is nonconstitutional error and
thus subject to harm analysis. See Tex. R. Evid. 103(a); Tex. R. App. P. 44.2; King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). We must disregard any error unless it affects the
substantial rights of the individual. Tex. R. App. P. 44.2. Here, Cornett's testimony regarding
whether Moncier told him he saw a gun represents only a fraction of the evidence weighing in favor
of a finding of guilt. The content of Cornett's statement (that Moncier did not say Garcia had a gun)
could be considered as favorable toward Garcia. In light of the amount of evidence properly
admitted which supports the jury's conclusion, we cannot say that admission of Detective Cornett's
testimony was harmful. After examining the entire record, we are assured this error did not influence
the jury or had but a slight effect, and so we will disregard this error.
Admissibility of State's Evidence at Punishment Phase
            In his fourth and fifth points of error, Garcia complains the trial court erred in overruling
Garcia's objections to evidence presented by the State at the punishment phase of trial. We review
the trial court's decision to admit evidence at the punishment phase for an abuse of discretion. See
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).
Authentication of Juvenile Judgment
            First, in point of error number four, Garcia contends the trial court erred in overruling his
objection into evidence of a 1999 juvenile judgment for unlawful carrying of a weapon, labeled
State's Exhibit No. 2, because the document was not properly authenticated and failed to meet the
requirements of Rule 902(4).
            A party offering documentary evidence must authenticate the document. Tex. R. Evid. 901. 
Certain documents, however, are self-authenticating. Tex. R. Evid. 902. That is, extrinsic evidence
of the document's authenticity is not required. Parties at trial addressed the certification attached to
the juvenile record at issue in terms of Rule 902(4) only. This rule provides:
Certified Copies of Public Records. A copy of an official record or report or entry
therein, or of a document authorized by law to be recorded or filed and actually
recorded or filed in a public office, including data compilations in any form certified
as correct by the custodian or other person authorized to make the certification, by
certificate complying with paragraph (1), (2) or (3) of this rule or complying with any
statute or other rule prescribed pursuant to statutory authority. 

Tex. R. Evid. 902(4).
            After obtaining a supplemental clerk's record regarding this judgment, we find it to be
properly certified by the clerk of the District Court of Dallas County, Texas, as a true and correct
copy of the original as it appears of record in that office. The certificate is given under the hand and
seal of the district clerk which contains a signature, by a deputy clerk, as an attestation or execution
and the seal of the court. We find the document meets the requirements of Rule 902(4) as self-authenticating. 
            The trial court did not abuse its discretion in admitting the judgment. We overrule Garcia's
fourth point of error. 
Admissibility of Community Supervision Revocation
            In his fifth point of error, Garcia contends that, during the punishment phase, the trial court
erred by admitting evidence of revocation of community supervision in two other cases. Again, we
review the trial court's decision for an abuse of discretion. Mitchell, 931 S.W.2d at 953.
            In July 2000, Garcia pled guilty to deadly conduct and burglary of a habitation. He was
sentenced to ten years' community supervision for those convictions. In June 2001, his community
supervision was revoked on each and, at the time of trial for the instant offense, he was appealing
the revocations. Garcia objected to the admissions, contending that, since the revocations were being
appealed at the time, the judgments could not be admitted. Noting that the judgments were not used
for enhancement purposes, the trial court admitted the judgments. 
            The Texas Code of Criminal Procedure provides:
[E]vidence may be offered by the state and the defendant as to any matter the court
deems relevant to sentencing, including but not limited to the prior criminal record
of the defendant, his general reputation, his character, an opinion regarding his
character, the circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of
an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence
to have been committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or finally
convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2004) (emphasis added). Clearly,
the judgments were admissible under Article 37.07. Essentially, Garcia contends the judgments were
inadmissible because they were not final convictions. The plain language of Article 37.07, however,
specifically provides for admission of such evidence. The trial court did not abuse its discretion by
admitting the community supervision revocations at the hearing on Garcia's punishment. We
overrule Garcia's fifth point of error. 
Instruction on Lesser-Included Offense of Assault
            In his sixth point of error, Garcia contends the trial court erred in denying his requested
charge instruction on the lesser-included offense of assault. The jury charge included instructions
on aggravated robbery, robbery, and theft, but the trial court did not allow an instruction on assault. 
            Either the State or the defendant may request an instruction on a lesser-included offense
when: (1) the lesser-included offense is included within the proof necessary to establish the offense
charged, and (2) some evidence exists in the record that would permit a rational jury to find that, "if
the defendant is guilty, he is guilty only of the lesser offense." Hampton v. State, 109 S.W.3d 437,
440 (Tex. Crim. App. 2003); see Tex. Code Crim. Proc. Ann. art. 37.09.
            The State does not dispute that assault is a lesser-included offense of aggravated robbery. 
Thus, we address only whether the record contains evidence that, if Garcia was guilty, he was guilty
only of assault. In making this determination, the trial court should make a determination as to
whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the
defendant is guilty only of that offense, not the greater offense. Rousseau v. State, 855 S.W.2d 666,
672–73 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence is sufficient to entitle
a defendant to a lesser charge. Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001).
            A conviction for robbery requires proof of actual or threatened violence to the victim, or
intimidation of such a nature that the victim was put in fear. Tex. Pen. Code Ann. § 29.02(a)(2)
(Vernon 2003). The fear must be of such nature as in reason and common experience is likely to
induce a person to part with his or her property against his or her will. Bignall v. State, 887 S.W.2d
21, 26 (Tex. Crim. App. 1994). A person commits aggravated robbery
[I]f he commits robbery as defined in Section 29.02, and . . . 

                        (1) causes serious bodily injury to another;
 
                        (2) uses or exhibits a deadly weapon; or
 
(3) causes bodily injury to another person or threatens or places another
person in fear of imminent bodily injury or death, if the other person is:
 
(A) 65 years of age or older; or
 
(B) a disabled person.

Tex. Pen. Code Ann. § 29.03(a) (Vernon 2003). A person commits an assault by intentionally,
knowingly, or recklessly causing bodily injury to another. Tex. Pen. Code Ann. § 22.01(a)(1)
(Vernon Supp. 2004).
            In order for Garcia to be entitled to an instruction on the lesser-included offense of assault,
there had to be some evidence that, if he was guilty, he was guilty only of assault, not of robbery.
Therefore, to merit an instruction on assault, there had to be some evidence Garcia did not commit
theft, the principal element distinguishing robbery from assault. See Tex. Pen. Code Ann. §§ 22.01,
29.02. At trial, Garcia argued on the issue of whether he had a gun, not whether he took property. 
Moncier testified Garcia and Valla took his money and his cell phone. The defense called no
witnesses, so there was no testimony to the contrary. Defense counsel suggested that no offense
occurred at all and that the story was a scheme to get his cell phone back after Garcia and Valla
abandoned a drug run. But the attorney's comments are not evidence. Nor would his theory have
suggested Garcia did not take the property. There is no evidence in the record from which a rational
jury could find that Garcia was guilty only of assault and that he did not take Moncier's property. 
We overrule Garcia's contention to the contrary. 
Jury Argument
            Garcia also argues the trial court erred in overruling his several objections to the State's jury
argument during both stages of the trial. 
            Proper jury argument falls into one of four categories: (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a
plea for law enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). To
constitute reversible error, the jury argument must be extreme or manifestly improper or inject new
and harmful facts into evidence. Id.
            Garcia's seventh point of error centers around the following exchange:
[State]: . . . . Specifically, a person is criminally responsible for an
offense committed by the conduct of another if acting with intent to promote or assist
in the commission of the offense he solicits, encourages, directs, aids or attempts to
aid the person -- the other person in the commission of the offense. Assisting,
soliciting, encouraging, think back to the evidence you heard. Think about the punch
in the side that [Moncier] told you about.
 
[Defense counsel]: I'm going to object. That misstates the evidence
in question.
 
THE COURT: Overruled in the sense, ladies and gentlemen of the
jury, you're to decide what the evidence is in this case. You remember what the
witnesses say.
 
[State]: Think about the object he felt in his side. It was placed there
by David Garcia.

            The statement made by the State about the "punch" in the side was not a verbatim quote from
the testimony. However, the victim's actual statement was Garcia "stuck" something in his side. We
believe that the meaning and general connotation of the two words are very similar and do not find
this argument to be error. We overrule Garcia's seventh point of error.
            Garcia's eighth point of error centers on the following statement by the State, "I am really in
awe that Mr. Webber can stand before you and essentially tell you to disregard your oaths to follow
the law." Garcia argues this is a mischaracterization of the defense's argument, stating that it falls
outside the record, is an improper personal opinion, and attempts to attack Garcia through his
counsel.
            An appellant may not complain of an allegedly improper argument if he or she invited the
argument of which he or she complains. Ripkowski v. State, 61 S.W.3d 378, 393 (Tex. Crim. App.
2001). Defense counsel in Ripkowski invited the prosecutor's remark regarding the possibility of
change in parole laws when defense counsel requested and received an instruction regarding the
eligibility for parole of one convicted of capital murder and when he presented testimony on the
same subject. Id. at 394. Similarly, here, defense counsel invited the State's statements with his
earlier argument:
[Defense counsel]: . . . . Now he didn't have a deadly weapon. Now
he's a party. This party theory is garbage.
 
[State]: Your Honor, it's not a theory. It's the law.
 
THE COURT: Well, this is argument, ladies and gentlemen. Just
remember that anything that the attorneys say that is not in harmony with what I've
given you in the court's charge is to be disregarded.
 
[Defense counsel]: Yes, sir. 
This party liability is garbage. It's a double-sided coin and it's
garbage. 
            Further, the State's statement falls into one of the four proper areas of jury argument. See
Jackson, 17 S.W.3d at 673. Counsel is permitted to respond to the arguments of opposing counsel. 
See id. We conclude the trial court did not err when it overruled Garcia's objection to the State's
argument and overrule his eighth point of error. 
            In his ninth point of error, Garcia makes a similar argument regarding the following
exchange, asserting the State's remarks were outside the record:
[State]: . . . . So for Mr. Webber to stand up here as an officer of the
court himself and say, Hey, the law is garbage, please don't follow the law --
 
[Defense counsel]: Judge, I'm going to object that I said the law is
garbage in this case. She's misstating what I said. This is the second time she's done
that.
 
THE COURT: Overruled.

            Similar to the argument presented in his previous point of error, defense counsel invited the
State's response by questioning "party theory" and "party liability" and by labeling them "garbage." 
Therefore, Garcia cannot complain of the invited argument. The State's remark to the jury is directed
as a response to defense counsel's argument and, as such, falls in the category of permissible
argument. Accordingly, we overrule Garcia's point of error. 
            In his tenth point of error, Garcia contends the following exchange constitutes an attempt by
the State "to attack defense counsel in an effort to inflame the minds of the jury to the accused's
prejudice." 
[State]: . . . . It is not they back door their case through our witnesses. 
You know, any -- you must recall Mr. Webber's opening statement, everything he
said about the evidence will show X, the evidence will show Y, the evidence will
show Z. Well, please remember there was no evidence to support anything he said
in opening statement.
 
[Defense counsel]: Judge, that is way outside the record. It's
improper.
 
THE COURT: I disagree. I will overrule the objection.
 
[State]: Evidence comes from here. This is the front door. Evidence
does not come from here. That's the back door. You know, I will just throw out a
couple of things. When [Moncier] was on the stand, you told him to take you there
so you could buy drugs, right? He made that up on the spot.
 
[Defense counsel]: I'm going to object that that's improper jury
argument.

                                    THE COURT: Overruled.

            Garcia did not specifically argue this was an attack on defense counsel to inflame the jury
at trial. His objection at trial was that the statement was "improper jury argument." Also, defense
counsel objected that the statement was "way outside the record." The complaint on appeal must
comport with the objection lodged at the trial court level. Guevara v. State, 97 S.W.3d 579, 582
(Tex. Crim. App. 2003). To preserve an issue for appeal, an appellant must make a timely and
specific objection at trial. Tex. R. App. P. 33.1. Even if the general objections had preserved this
issue for review, we find Garcia's contentions meritless.
            The State's argument that the evidence did not support the defense's contention is a
summation of the evidence and also represents a response to defense counsel's opening argument
regarding what the evidence would show. There is no evidence Moncier wanted to "score some
dope" as stated by defense counsel. Therefore, the State's argument falls within the areas of
permissible jury argument, and we overrule Garcia's tenth point of error.
            In his twelfth point of error, Garcia complains of the trial court's overruling of his objection
to the State's jury argument during the punishment stage of trial. Garcia contends the State's
argument referred to facts outside the record and constituted unsworn testimony from the prosecutor. 
The portion of jury argument at issue is as follows:
[State]: . . . . But let's think about something else. This was a very
premeditated act. It's a reasonable deduction from the evidence you heard yesterday
that those individuals saw [Moncier]. They saw that stop. They're sitting in that
parking lot, and they're watching the squad car. You know how people do late at
night and they're running around -- 
 
[Defense counsel]: Objection. There is no evidence they were
watching the squad car.
 
THE COURT: Overruled.
            The State prefaced its argument with the statement that it was a reasonable deduction from
the evidence that Garcia saw the police car and the detention of the vehicle Moncier was occupying.
            Counsel is allowed wide latitude without limitation in drawing inferences from the evidence
so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. Gaddis
v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).
            We believe this argument does not present error and is allowed as a reasonable deduction
from the evidence presented.
Judgment and Cumulated Sentence
            In his eleventh point of error, Garcia maintains that the trial court's judgment and sentence
cumulating the sentence pronounced against him is void because the State failed to present evidence
concerning the alleged prior judgment and sentence or that Garcia was the person there convicted
and sentenced.
            When a defendant is convicted of two or more offenses, the trial court, in its discretion, may
assess concurrent or consecutive sentences. Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon
Supp. 2004). Although there does not appear to be an express evidentiary requirement for linking
the defendant to a prior conviction, the statute does state the defendant must have been convicted
in two or more cases. Miller v. State, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000). The Texas Court
of Criminal Appeals reads into the statute an implied requirement that the trial court must have
evidence of the prior convictions before it may exercise discretion to cumulate sentences. Id. 
Defense counsel's admissions on the record to the existence of the prior sentences can be sufficient
evidence to support the trial court's cumulation of sentences. See Resanovich v. State, 906 S.W.2d
40, 42 (Tex. Crim. App. 1995). 
            First, we note the trial court properly admitted into evidence the two prior felony judgments
with which the trial court cumulated the sentence for the instant offense. This evidence alone is
sufficient to identify the convictions, that is, the court, the sentence, the date, the cause number, and
the nature of the prior convictions. The State also dictated into the record the specifics of each
conviction, naming the offense and the cause number.
            The record also reveals ample evidence that connects those convictions to Garcia. When the
records were admitted, defense counsel acknowledged the judgments:
[Defense counsel]: Well, obviously, I didn't know him back in July
of 2000, I didn't plead him guilty on those. I think from my understanding I think
once the notice of appeal period ends, I think that realistically I think he's lost the
right to contest that appeal, . . . .
 
THE COURT: Right.
 
[Defense counsel]: But the revocation itself is certainly under appeal. 
I guess he could file with that appeal part of it a motion to vacate that plea as an
involuntary plea or I guess some type of jurisdictional error, . . . .

            During defense counsel's direct examination of Garcia's mother at the punishment hearing,
defense counsel refers directly to these sentences, further acknowledging the sentences and identity
of the person convicted:
Q.[Defense counsel] And then last year he had two cases where he was
put on one probation for a burglary, a stealing crime, and for deadly conduct, a non-contact felony crime. Do you understand that?
 
A.[Witness] Yes.
 
Q.Okay. These probations were revoked already because of the
aggravated robbery; is that correct?
 
A.Yes.
  
Garcia's mother discusses the convictions, saying she could not recall the exact date but she knew
"he got probation." She also discussed the facts underlying the two felony convictions for which he
was placed on community supervision, explaining the complainant was a brother of Garcia's
girlfriend. 
            Additionally, during closing argument, defense counsel specifically referred to the
convictions: "The other two felonies, shooting the gun, deadly conduct, that's a non-contact felony,
shooting a gun; and the other one is stealing, a burglary." He goes on to explain that the convictions
were already taken into account since Garcia was not eligible for community supervision. 
            The copies of the judgments along with defense counsel's acknowledgments on the record
and testimony of the defense witness that Garcia was previously convicted for burglary and deadly
conduct are sufficient evidence of the prior judgments and sentences to support the trial court's
cumulation order, establishing that Garcia was the person convicted and sentenced in the judgments
with which the trial court cumulated sentences. The trial court's decision, therefore, was not an
abuse of discretion. We overrule Garcia's point of error. 
Motion for Mistrial
            Finally, point of error thirteen involves the trial court's overruling of Garcia's motion for
mistrial. Garcia contends the trial court erred in overruling his motion for mistrial after the trial
court sustained his objection to the State's jury argument during the punishment phase of trial.
            A mistrial is a device used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile. Wood v. State, 18 S.W.3d
642, 648 (Tex. Crim. App. 2000). An instruction to disregard improper argument generally cures
any prejudicial effect of the improper argument. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim.
App. 1995). We review a trial court's granting or denial of a motion for mistrial for an abuse of
discretion. Wood, 18 S.W.3d at 648. 
            The pertinent portion of the State's jury argument about which Garcia complains is as
follows:
[State]: . . . . Now, there was no -- there was not testimony that
[Garcia] didn't have a gun; it was that [Moncier] did not see him with a gun. But
what do we have -- these should make you feel very good about your verdict. A
weapon's [sic] charge when he's 16 years old, a deadly conduct where he's actually
firing a gun at another person --
 
[Defense counsel]: Objection. There's no evidence that he fired a gun
at another person.
 
THE COURT: Sustained.
 
[Defense counsel]: Judge, I'm going to ask that they be instructed to
disregard that.
 
THE COURT: Disregard the last statement. You're free to examine
the document. It's in evidence.
 
[Defense counsel]: Judge, I'm going to ask for a mistrial.
 
THE COURT: Overruled. 

            The State introduced a judgment convicting Garcia of deadly conduct. Included in the exhibit
was the indictment in that case alleging Garcia did "discharge a firearm at and in the direction of Jose
Avila, an individual." The only objection to this exhibit was that the conviction was not final, an
issue previously addressed. Further, defense counsel questioned Garcia's mother: "Q. On this
deadly conduct case for shooting a gun, who is Jose Avila? Do you know? A. Jose Avila, yes the
brother of his girlfriend." Based on the evidence presented in this case, we do not find the State's
argument to be error. Further, the trial court promptly sustained the objection and instructed the jury
to disregard the statement, which we presume the jury followed. We overrule Garcia's thirteenth
point of error.
            We affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          September 25, 2003
Date Decided:             February 24, 2004

Do Not Publish